## HIGGINS et al. v. SOUTH TEXAS DEVELOPMENT CO. et al.

### No. 1405—5593.

Commission of Appeals of Texas, Section A.
Feb. 4, 1931.

John B. Warren, of Houston, for plaintiffs in error.

Harry Holmes, of Houston, and Rucks & Enlow, of Angleton, for defendants in error.

HARVEY, P. J.

This is an action of trespass to try title brought in the year 1910 by the South Texas Development Company against Joseph Higgins, and his sisters, Hannah Ward and Eliza Ward, and others, to recover a tract of 91 acres of land in Brazoria county. Joseph, Hannah, and Eliza pleaded not guilty and the statute of ten years' limitation (Rev. St. 1925, art. 5510). During the pendency of the suit various other parties came into the suit, or were brought in, including the Bankers' Mortgage Company, the successor in title to the South Texas Development Company. The case was tried to a jury on April 30, 1928. At the conclusion of the testimony the court instructed the jury to return a verdict for the Bankers' Mortgage Company for the 91 acres. The verdict was returned, and judgment was entered accordingly. The judgment was affirmed by the Court of Civil Appeals [21 S.W.(2d) 540], Justice Graves dissenting. Writ of error was granted on the application of Joseph, Hannah, Eliza, and their codefendants.

The plaintiffs in error contend that the issue of ten years' limitation pleaded by them is raised by the evidence, and therefore the trial court committed error in peremptorily instructing a verdict against them.

There is evidence contained in the record to show the following facts:

On March 4, 1881, Branch T. Masterson conveyed to Pompey Higgins a tract of 131 acres of land, of which the 91 acres in controversy was a part. For the purchase money, Pompey executed his notes. He and his wife, Maria, with their four minor children, Joseph, Jacob, Hannah, and Eliza, moved on the land and made it their home. In 1883, Pompey, without his wife joining in the deed, conveyed away 40 acres of the 131 acres, leaving a balance of 91 acres which is involved in this controversy. Pompey paid all the above-mentioned purchase-money notes during the lifetime of Maria. The latter died in the year 1890. Some time between the date of Maria's death and the year 1893, Pompey apportioned and set apart to Joseph, Hannah, and Eliza (who had become of age and were married), certain specific parcels of the 91 acres, as their share inherited by them from their mother. These three children took possession of these specific parcels and resided thereon, and used and cultivated same, continuously, for more than thirty years, and during all this time claimed said parcels as their own. Pompey reserved to himself a different parcel of the 91 acres. Afterward, in the year 1893, Pompey executed a deed to H. Masterson for the 91 acres of land, which recited that the grantor owed Masterson a balance of $310 on the purchase-money notes executed to Branch T. Masterson, and that the conveyance was made in satisfaction of this balance. In 1894, H. Masterson deeded the 91 acres to Pompey, retaining the vendor's lien to secure four purchase-money notes of $90 each. On July 10, 1897, a judgment was duly rendered by the district court of Brazoria county, in favor of H. Masterson against Pompey for the amount due on the last-mentioned notes, and for fore-

closure of the vendor's lien on the land, as against Pompey, Joseph, Hannah, and Eliza. The land was duly sold under this judgment and conveyed by the sheriff to H. Masterson on September 7, 1897. In a subsequent suit brought by H. Masterson against Pompey, judgment was rendered by the district court of Brazoria county on February 7, 1905, in favor of Masterson against Pompey for the sum of $977.16. The sum thus recovered by Masterson is recited in this judgment to be the amount due on five notes executed by Pompey to H. Masterson on October 1, 1897, for the purchase money for said 91 acres of land; and a foreclosure of the vendor's lien was decreed. Sale under this judgment was made, and deed for the land was executed by the sheriff to H. Masterson on March 28, 1905. On September 18, 1905, H. Masterson deeded the 91 acres to the South Texas Development Company; and, as already shown, the latter company instituted this suit in the year 1910.

██ With these facts in evidence before the jury, the instructed verdict, as given by the trial court, was unauthorized. The foreclosure judgment of July 10, 1897, against Pompey, Joseph, Hannah, and Eliza, was a valid judgment; and the foreclosure sale thereunder, on September 7, 1897, operated to divest them of all their rights in the land and vest same in Masterson. However, there is testimony to show that Joseph, Hannah, and Eliza remained in peaceable possession and use of specific parts of the land, under claim of exclusive ownership, until this suit was commenced more than ten years afterwards. This possession became adverse to Masterson the moment he acquired title under the foreclosure sale of September 7, 1897. Johnson v. Portwood, 89 Tex. 235, 34 S. W. 596, 787. Counsel contends that, since Masterson resold the land to Pompey on October 1, 1897, with express reservation of the vendor's lien to secure the purchase money, and since Pompey continued to reside in and used a part of the land, the adverse possession held by Joseph and his sisters was interrupted, and their possession did not again become adverse to Masterson until the foreclosure sale under the judgment of February 7, 1905, took place. Aside from the recitals of the last-mentioned judgment, no resale to Pompey is shown in evidence. With respect to their claim to said specific parts of the 91 acres, Joseph, Hannah, and Eliza are strangers to said judgment. As against their said claim, the judgment and its recitals are incompetent to prove such resale. McCamant v. Roberts, 66 Tex. 260, 1 S. W. 260.

██ The ruling of the majority of the Court of Civil Appeals to the effect that the evidence did not raise the fact issue of ten years' adverse possession by Joseph, Hannah and Eliza, prior to the commencement of this suit in the year 1910, is erroneous. The several rulings of that court on the other questions discussed in the majority opinion are correct.

We recommend that the judgment of the trial court and that of the Court of Civil Appeals affirming same be reversed, and the cause remanded.

CURETON, C. J.

Judgments of the Court of Civil Appeals and district court are both reversed, and cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.