**BROWN et al. v. HART et al.**

No. 3618.

Court of Civil Appeals of Texas. Amarillo.

Oct. 21, 1931.

Rehearing Denied Nov. 18, 1931.

Levens, McWhorter & Howard, of Lubbock, for appellants.

Williams & Day, of Plainview, Bledsoe, Crenshaw & Dupree and R. A. Sowder, all of Lubbock, and Cecil H. Tate, of Muleshoe, for appellees.

JACKSON, J.

This is a suit in trespass to try title, instituted in the district court of Bailey county, Tex., by the plaintiff R. L. Brown, to recover approximately five acres of land out of the S. E.¼ of section 40, in Bailey county, and lot No. 17 in block No. 12 of the original town of Muleshoe, both tracts fully described in his petition, from the individual defendants E. R. Hart, H. A. Douglass, and D. P. Brown, and the corporate defendants Whaley Lumber Company, Continental Gin Company, Fairbanks, Morse & Company, and the Farmers' & Merchants' National Bank of Farmersville, Tex.

Plaintiff's petition, with the exhibits attached thereto, covers 52 pages of the transcript, but we deem it sufficient to state that in addition to trespass to try title, the plaintiff by his allegations attacks as void certain judgments obtained against him in causes Nos. 61, 186, 248, 456, and 490, and the sales had thereunder, and sets out the alleged facts which he claims renders said judgments and such sales void.

He also alleges that each of said judgments were for the same indebtedness, and if for any reason the judgment in cause No. 490 was not void for a lack of necessary parties as he alleges, then he says that such judgments should not be enforced against him and a sale of the land had by virtue thereof, because the indebtedness on which judgment No. 490 is purported to have been based had been paid and that, if it had not been fully paid, he states that he is ready, willing, and anxious to make payment of any balance due thereon, which he tenders in his petition and asks for an injunction enjoining any further sale under said judgment in cause No. 490.

No complaint is made of the action of the court in refusing to allow plaintiff damages, either actual or exemplary, against E. R. Hart for the alleged malicious suits and causing to be issued illegal sequestrations by which possession of the property was alleged to have been illegally taken.

Katherine Brown, by R. L. Brown as next friend, with leave of the court intervened and, in addition to an action of trespass to try title, alleged that she is a minor, about eighteen years old, the daughter of R. L. Brown and Kate Aston Brown, deceased; that she has never been married, has no guardian of her estate; that her mother, Kate Aston Brown, died about April 4, 1922, intestate; that no administration was ever had on her mother's estate; and that intervener is the sole surviving heir of the deceased Kate Aston Brown. That her mother left community funds which her father, R. L. Brown, used in the pur-

chase of the property involved in this suit, and that intervener is entitled to a one-half undivided interest in said property. She charges E. R. Hart with notice of her interest and seeks a judgment decreeing her a one-half interest in said property, clear of all incumbrances and claims asserted by any and all of the defendants.

The defendant E. R. Hart answered, asserting the validity of the various judgments attacked by plaintiff, pleading the statutes of two and four years' limitation, and alleged that the judgment in cause No. 490 is res judicata of the issue of payment and damages claimed by the plaintiff. To the intervention he pleaded general denial.

The defendant D. P. Brown answered, but no complaint is made of the judgment against him and no further notice will be taken of his pleading.

The defendant Douglass answered by a plea of not guilty, general denial, a plea of two years' statute of limitation, and pleaded that the judgment in cause No. 456 is res judicata. That he purchased the property he held from R. L. Brown for $1,000 and the plaintiff was estopped to assert any right, title, or interest thereto. That he purchased the property without any notice of record or fact of the claims of intervener.

The Farmers' & Merchants' National Bank of Farmersville defaulted, and the other corporate defendants disclaimed.

In compliance with the verdict returned by the jury in obedience to the peremptory instruction given by the court, judgment was entered that plaintiff and intervener take nothing and the defendants be discharged with their costs. From the judgment in favor of E. R. Hart and H. A. Douglass, the plaintiff and the intervener have prosecuted separate appeals.

In the plaintiff's assignments he challenges as error the action of the court in directing a verdict against him because the evidence shows that each of the money judgments obtained against him were recovered on the same indebtedness, and the pleading and testimony tended to show that such indebtedness had been paid, at least in part, and that he was ready, able, and willing to pay any balance owing by him and the issue of such payment should have been submitted to the jury.

The record discloses that in November, 1922, the plaintiff purchased what we will designate as the five-acre tract of land, and in March, 1924, purchased lot 17. In June, 1923, he contracted with E. R. Hart for certain lumber and building material for the erection of a gin on the five-acre tract. That such material was furnished. That the plaintiff failed to pay therefor, and on July 20, 1923, he executed to E. R. Hart a deed of trust on said five-acre tract to secure the payment of $3,000, and on the same date E. R. Hart filed a materialman's lien against said property. That plaintiff failed to pay such indebtedness, and E. R. Hart, in November, 1923, filed cause No. 61 against the plaintiff, seeking judgment for his debt and a foreclosure of his liens upon said five-acre tract. That plaintiff answered in said suit, and on December 29th an agreed judgment was entered in favor of E. R. Hart for the sum of $1,730, with a foreclosure of his liens. That it was also agreed that no order of sale should be issued on said judgment, provided the plaintiff pay $576.66 on February 1, June 1, and December 1, 1925, respectively. That plaintiff paid the installment due on February 1st, and on March 11th paid $113.40, but defaulted in the other payments. That no order of sale was issued within a year after the breach of the agreement, and on May 24, 1926, E. R. Hart instituted suit in cause No. 186 to revive the judgment in cause No. 61 and that said judgment was revived. That plaintiff was given credit for the payments theretofore made, and judgment for the sum of $1,289.68, together with a foreclosure of the liens, was entered in favor of E. R. Hart. That on April 26, 1927, an order of sale was issued on said judgments, which provided that it should be returned within ten days from the date of its issuance. That on June 7th thereafter, the sheriff executed said order of sale by selling said five-acre tract to E. R. Hart for $200, which sale was invalid because executed more than thirty days after it was made returnable. On November 3, 1927, E. R. Hart filed suit against the plaintiff in cause No. 248 in trespass to try title to recover said five-acre tract. That Hart obtained judgment in said cause, but it was void because of insufficient service on R. L. Brown, the defendant in said cause, and the plaintiff in this suit. On November 1, 1927, an execution was issued in cause No. 186 and placed in the hands of the sheriff, who levied on lot 17 and thereafter sold the same to E. R. Hart, the highest and best bidder, for the sum of $200, which was conveyed to Hart by sheriff's deed. That on May 15, 1928, in cause No. 456, E. R. Hart brought an action in trespass to try title against R. L. Brown to recover title and possession of said lot 17 and on June 23, 1928, after due service upon R. L. Brown, obtained judgment in said suit for the title and possession of said lot 17. On April 2, 1929, E. R. Hart brought suit against R. L. Brown, D. P. Brown, and others in cause No. 490. The defendants R. L. Brown and D. P. Brown filed a joint answer in cause No. 490, and on May 10, 1929, E. R. Hart recovered a judgment in said cause No. 490 for the sum of $1,614 with interest and a foreclosure of his liens against R. L. Brown on said five-acre tract. That on June 24th thereafter, order of sale was issued in cause No. 490, returnable within thirty days after its issuance. That under said order of sale

the land was sold by the sheriff to E. R. Hart for the sum of $950 on August 6, 1929, but this sale was invalid, because returned after such order of sale had become functus officio. On November 21, 1929, another order of sale was issued in said cause No. 490, returnable in ninety days after date of its issuance, under which the land was regularly sold to E. R. Hart for the sum of $500 and conveyed to him by sheriff's deed.

This suit was instituted by the plaintiff R. L. Brown on January 6, 1930, attacking as void the money judgments had against him as heretofore stated. No appeal was taken by R. L. Brown from any of the judgments in causes Nos. 61, 186, 248, 456, and 490. The plaintiff in his petition does not specifically attack the validity of the judgment in cause No. 456, the suit in trespass to try title, in which E. R. Hart recovered the title and possession to lot 17. He alleges the conclusion that such judgment was void, but fails to set out any fact or facts on which such conclusion is based. Under this record the judgment in cause No. 456 is valid.

No complaint is made by the plaintiff in this appeal because the court denied him a recovery of the land and refused him all damages. The sole contention in these assignments is that the court should have submitted to the jury the sums of money that had been paid on his indebtedness to E. R. Hart.

In cause No. 490 E. R. Hart, in addition to his suit in trespass to try title, alleged that he had obtained judgment against R. L. Brown for the sum of $1,730, together with interest, costs, and a foreclosure of his liens. That in cause No. 186 the amount of the indebtedness still unpaid was adjudged to be $1,289.68 and for costs. That said sum was still due and unpaid, and seeks a recovery thereof. In cause No. 490 R. L. Brown and D. P. Brown answered, setting up various defenses, and judgment was rendered that E. R. Hart have and recover of and from R. L. Brown $1,614 with interest thereon from date of said judgment at the rate of 10 per cent. per annum, etc. This is a valid, subsisting judgment from which no appeal was prosecuted, and in our opinion is res judicata of the amount of the indebtedness and all payments theretofore made.

In 34 C. J. p. 861, § 1271, the author says: "A defendant who omits to plead a partial payment on the debt in suit is concluded by the judgment, and cannot afterward maintain a suit to recover back such payment, unless he was prevented from setting up the payment by the action of the court, or by fraud, accident or surprise, without fault on his own part, or, as held in some cases, where plaintiff was guilty of a breach of trust in failing to credit a part payment."

In Higgins et al. v. South Texas Development Co. et al., 21 S.W.(2d) 540, 543, in an opinion by Chief Justice Pleasants of the Court of Civil Appeals at Galveston, it is held: "The claim of defendants that the land was paid for prior to the death of their mother, Maria Higgins, and that H. Masterson held no lien upon their mother's one-half interest, cannot be entertained, because defendants are precluded by the judgment against them before mentioned, foreclosing Masterson's lien, from now claiming that such lien was discharged in the lifetime of their mother."

A writ of error was granted in this case and the judgment of the Court of Civil Appeals reversed on the question of limitation, but the holding above is approved in the following language: "The foreclosure judgment of July 10, 1897, against Pompey, Joseph, Hannah, and Eliza, was a valid judgment; and the foreclosure sale thereunder, on September 7, 1897, operated to divest them of all their rights in the land and vest same in Masterson." (Tex. Com. App.) 35 S.W. (2d) 98, 99.

For additional authorities, see annotations, 13 A. L. R. 1151.

Under this record and these authorities the judgment in cause No. 490 was res judicata of the amount still due E. R. Hart and of all sums theretofore paid on the indebtedness of R. L. Brown to E. R. Hart and of the credits to which he was entitled.

Neither law nor equity sustains the plaintiff's contention that he is entitled to credit on the judgments for the sums bid by E. R. Hart for the land at execution sales where such sales are admittedly invalid.

What we have said disposes of the plaintiff's assignment attacking the ruling of the court in excluding testimony as to payments made by him prior to the judgment in cause No. 490. The plaintiff does not allege that he was prevented from setting up payment in said cause by the court or by fraud or by accident or surprise, or that E. R. Hart violated any trust in failing to credit any payment made.

The judgment against the plaintiff is affirmed.

The intervener assails as error the action of the trial court in directing a verdict against her because she pleaded, and the testimony tended to show, that the land involved in this controversy was purchased by her father, R. L. Brown, with community funds belonging to him and her deceased mother, Kate Aston Brown, and that the defendant E. R. Hart had knowledge thereof, or was in possession of sufficient facts at the time he acquired his rights to the land to put him on inquiry as to the interest of intervener in said property.

The record discloses that R. L. Brown and his wife were residing in Collin county, Tex.,

where, on April 4, 1922, his wife died. That intervener is approximately nineteen years of age at this time and is the only surviving heir of R. L. Brown and his deceased wife Kate Aston Brown. That Kate Aston Brown left no will, no administration was ever had on her estate, and no guardian was ever appointed for intervener, and she has never married. That in August, 1922, R. L. Brown went to Bailey county and in November thereafter purchased the five-acre tract of land for $500. That thereafter, in March, 1924, he purchased lot 17 in the town of Muleshoe.

R. L. Brown testified that at the time of his wife's death they owned personal property of the approximate value of $6,000. That he also sold the 1922 crop, and that when he purchased the property involved, he had about $10,000 in money. That he paid $500 for the five-acre tract out of the funds of the community estate of himself and wife, and that he paid $150 for lot 17 out of the community funds of himself and wife, and that one-half of the $10,000, the proceeds of the community estate, belonged to intervener. That he kept the funds all together and checked on them indiscriminately. That in the summer of 1923, his daughter visited in Muleshoe about six weeks, and visited there in 1924, 1925, and 1926. That Mr. Hart was living in Muleshoe at the time. That he had seen his daughter and Mr. Hart in the presence of each other in 1923. That he never saw Mr. Hart talking to her, but that intervener visited at Mr. Hart's home several times.

The record shows that R. L. Brown purchased from E. R. Hart on account the building material with which to erect a gin on the five-acre tract in June and July, 1923. That the material furnished went into the erection of the gin improvements, and Brown defaulted in the payment therefor and thereafter, on July 19, 1923, executed his note for $3,000, payable to E. R. Hart October 1, 1923, together with a deed of trust on said five-acre tract to secure the payment of said note, with interest thereon from August 1, 1923, at 10 per cent. per annum, and providing for 10 per cent. additional on principal and interest as attorney's fees. That R. L. Brown defaulted in the payment of said note, and on November 14, 1923, E. R. Hart filed cause No. 61 for the collection of the debt evidenced by the note and a foreclosure of the lien. That on December 29, 1924, by agreement of the parties, judgment was rendered in favor of E. R. Hart against R. L. Brown for his debt, interest, etc., and a foreclosure of his lien. It was also agreed that no execution should issue on the judgment until February 1st thereafter, on or before which date R. L. Brown agreed to pay E. R. Hart $576.66, with interest at the rate of 10 per cent. per annum, and if such payment was made, no execution should issue until the 1st of June,

1925, on which date R. L. Brown should pay the further sum of $576.66, with interest thereon at the rate of 10 per cent. per annum, and if such payment was made no execution should issue until the 1st day of December, 1925, on or before which date R. L. Brown agreed to pay Hart $576.66, with interest thereon at 10 per cent., etc. That R. L. Brown defaulted in the agreed payments to be made on the judgment and thereafter suit was instituted and said judgment revived.

■ Only interest at the legal rate of 6 per cent. could be collected on the account held by E. R. Hart against R. L. Brown for the lumber sold. By the contract evidenced by the note and deed of trust lien, E. R. Hart secured 10 per cent. interest for a definite period and R. L. Brown secured the benefit of a forbearance for the same period, which constituted a sufficient consideration for the transaction. 6 Tex. Jur. 827, § 187.

In Benson v. Phipps, 87 Tex. 578, 29 S. W. 1061, 47 Am. St. Rep. 128, Chief Justice Gaines for the Supreme Court says: "That an agreement by the debtor and creditor for an extension for a definite time, the debt to bear interest at the same rate, or at an increased, but not usurious, rate, is binding upon both, is held in many cases." Citing authorities.

In Steffian et al. v. Milmo Nat. Bank, 69 Tex. 513, 6 S. W. 823, 824, the same eminent jurist says: "This court has held that where the consideration of a deed is an antecedent debt only, or where a mortgage is taken merely to secure indebtedness, this is not sufficient to support the claim of a bona fide purchaser for a valuable consideration. McKamey v. Thorp, 61 Tex. 648; Spurlock v. Sullivan, 36 Tex. 511. There being no new consideration, should the grantee or mortgagee lose the land or his lien upon it, he still has his debt; and for that reason is held to have parted with nothing of value. But should the mortgagee give time upon his debt as a consideration for the security, his case is different. By extending the time of payment, he yields up, for a season, his right of action, which is a privilege deemed value in law. This is accordingly held, by the controlling weight of authority, sufficient to support the claim of an innocent purchaser." Citing authorities.

■ In order to constitute E. R. Hart a purchaser in good faith, "three elements were essential: Valuable consideration, absence of notice, and good faith." Houston Oil Co., of Texas et al. v. Hayden et al., 104 Tex. 175, 135 S. W. 1149, 1152.

If we are correct in holding that appellee Hart had paid a valuable consideration, that leaves for determination whether the evidence presented the issues of notice and good faith to be determined by the jury.

■ In determining whether the court erred in directing a verdict, we can consider only

the testimony tending to support intervener's contention. Stubblefield et al. v. Cooper (Tex. Civ. App.) 37 S.W.(2d) 818, and authorities cited.

The testimony is uncontroverted that R. L. Brown and Kate Aston Brown were husband and wife; that she died April 4, 1922, and left as her only surviving heir the intervener. That the father and mother of intervener had a community estate which the father sold and, from the revenues received therefor, paid the purchase price for the property in controversy. This testimony discloses that intervener secured an equitable title to a one-half interest in such property. The evidence is uncontroverted that the lien given to E. R. Hart by R. L. Brown through which the defendants assert title, was executed in July, 1923. That during the summer of 1923 the intervener, Katherine Brown, visited with her father in the town of Muleshoe, where E. R. Hart had his home. That intervener had been in the company of E. R. Hart and followed her father around and was with him when he was in company with E. R. Hart. That intervener visited E. R. Hart's home several times. That she also visited each summer in Muleshoe, where Mr. Hart lived, in 1924, 1925. and 1926.

It is settled by the opinions in this state that:

" 'Where the proof tends to establish a fact, and * * * it is within the power and to the interest of the opposing party to disprove it if false, the silence of the opposing party not only strengthens the probative force of the affirmative proof, but of itself is clothed with a certain probative force.' Pullman Palace Car Co. v. Nelson, 22 Tex. Civ. App. 223, 54 S. W. 624. The failure to produce evidence within a party's control raises the presumption that, if produced, it would operate against him; and every intendment will be in favor of the opposite party. Bailey v. Hicks, 16 Tex. 222; Thompson v. Shannon, 9 Tex. 536.

"Usually the force of evidence, though slight, is greatly increased by the failure of the opposite party to rebut it, where it is obvious that the means to do so are readily accessible to the party. Chandler v. Meckling, 22 Tex. 44; Needham v. State, 19 Tex. 332; Mutual Life Ins. Co. v. Tillman, 84 Tex. 31, 35, 19 S. W. 294." Farmers' Guaranty State Bank v. Burrus Mill & Elev. Co. (Tex. Civ. App.) 207 S. W. 400, 403.

The above authorities are quoted with approval in Western Shoe Co. v. Amarillo National Bank, by this court, 42 S.W.(2d) 469.

In Ross et al. v. A. W. Morrow, 85 Tex. 172, 19 S. W. 1090, 16 L. R. A. 542, in passing upon the sufficiency of the testimony, the Supreme Court says: "The proof relating to the question whether or not the defendant A. W. Morrow was ignorant of the fact that Anderson Ross had any interest in the land is as follows: He testified that he 'did not know that Nancy Burnham had any other children except Gid, Waddy, Sarah E., and Adelia Burnham and Mrs. Emily Hunter; that he did not know that Nancy Burnham was the mother of Anderson Ross; that he bought the entire tract in controversy in this suit; that Anderson Ross never lived with Jesse and Nancy Burnham; that he never saw him at their house, and that he had no knowledge of said Anderson being one of the family; that the persons constituting the family of Jesse Burnham at the time of the purchase by witness of the land in controversy were Gid, Waddy, Sarah E., and Adelia Burnham and Mrs. Emily Hunter; and that he thought these people constituted the entire Burnham family. On cross-examination, witness testified that he lived in Fayette county from 1838 to 1852; that he lived at Ruttersville, about five miles from La Grange; that he was not acquainted with Jesse Burnham while he lived in Fayette county; that he knew of him, and that he lived at La Grange; that Jesse and Nancy Burnham removed from Fayette to Burnet county in 1853 or 1854; that he knew Jesse and Nancy Burnham well from about 1856, when they lived in Burnet county; that he knew them as man and wife, and was acquainted with their children in Burnet county; that he was at their house in 1862, and lived in their neighborhood in Burnet county from and after the year 1868; that he knew Anderson Ross well; that as boys he and Anderson Ross associated together a good deal; that he did not know that Nancy Burnham was the mother of Anderson Ross; that Anderson Ross lived in Fayette county on what was known as "Ross Prairie," about three miles from Ruttersville; that he did not live with Jesse and Nancy Burnham in Burnet county.' He testified that he paid $3 per acre for the entire tract involved in this suit, 684 acres of which he owns, and 300 acres of which he conveyed to his codefendant, A. W. Morrow. We think that, the defendants having notice of the fact that the property was the community property of Jesse Burnham and his wife, and of the fact of her death, and having bought the land from her heirs, they cannot claim, under the facts of the case, to be purchasers without notice of who her heirs were."

See, also, Yates et al. v. Buffalo State Bank (Tex. Civ. App.) 229 S. W. 619; Bowles et al. v. Bryan et al. (Tex. Civ. App.) 277 S. W. 760.

■■ The law is that a party who has knowledge of such facts as would cause a fair and prudent man of ordinary caution to make further inquiry, is chargeable with notice of the facts which by ordinary diligence he would have ascertained. He is not warranted in shutting his eyes against the lights before him. Actual notice of facts which would put a prudent man on inquiry is suffi-

cient proof of notice. 5 Thompson on Real Property, 237, § 4192.

In Houston Oil Co. of Texas v. Hayden et al., supra, Justice Williams, speaking for the Supreme Court, says: "Although there be no knowledge of an adverse claim, and no circumstances actually brought to the attention of the intending purchaser pointing to one, he may yet appear to have remained purposely ignorant of facts of which he would have learned, had he been scrupulous about the rights of others; the circumstances may show that he has merely speculated on the absence of the proper record evidence of claims, not actually known, but suspected by him, to exist, by attempting to acquire, through the aid of the registration laws, a title which he does not really believe to be in his grantor. Such, in our opinion, would be a flagrant case of bad faith."

It will be noted that appellee Hart did not testify as a witness; that the appellees offered no testimony on the question of notice; that they were in a position to controvert the evidence of notice offered by intervener and failed to do so. Construing the testimony in behalf of intervener as true, in our opinion the issue of notice was sufficiently presented by the testimony to require the submission of such issue to the jury and the court erred in directing a verdict against intervener.

The judgment of the trial court is therefore affirmed as to the plaintiff R. L. Brown, and reversed and remanded in behalf of intervener Katherine Brown.