SAN ANTONIO LIFE INS. CO. v. GRIFFITH.   (No. 8327.)

(Court of Civil Appeals of Texas. Ft. Worth. March 4, 1916. Rehearing Denied April 8, 1916.)

**1. EVIDENCE ☞450(6) — PAROL EVIDENCE — EXPLANATION OF TERMS—"AMBIGUOUS."**

Where a written contract, employing a life insurance agent, provided that the company should handle the premium notes accepted by the agent subject to the following conditions, all of which were obligations on the part of the agent, evidence was admissible to explain what was meant by the term "handle," since the contract was ambiguous in that respect; "ambiguous" meaning doubtful and uncertain (quoting Words and Phrases, Ambiguous).

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2079; Dec. Dig. ☞450(6).]

**2. EVIDENCE ☞450(1)—"AMBIGUITY."**

"Ambiguity" is defined as an uncertainty of meaning or expression used in a written instrument; wanting clearness or definiteness; difficult to comprehend or distinguish; of doubtful import (quoting Words and Phrases).

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2080, 2081, 2084; Dec. Dig. ☞450(1).

For other definitions, see Words and Phrases, First and Second Series, Ambiguity.]

**3. EVIDENCE ☞451—"PATENT AMBIGUITY."**

"A patent ambiguity in an instrument is an uncertainty that arises at once on the reading; * * * is one produced by the uncertainty, contradictoriness, or deficiency of the language of the instrument" (quoting Words and Phrases, p. 919).

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2085–2092; Dec. Dig. ☞451.

For other definitions, see Words and Phrases, First and Second Series, Patent Ambiguity.]

**4. EVIDENCE ☞215(3) — ADMISSIONS — CONTRACT—LETTERS—AGENTS—ADVANCES.**

A letter, written by a life insurance company to its agent, admitting that it had agreed to advance one-half of his commission on the amount represented by premium notes, is competent as an admission of the meaning of the agreement in the written contract that the company would handle the premium notes.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 756, 757; Dec. Dig. ☞215(3).]

**5. EVIDENCE ☞265(1) — ADMISSION OF ADVERSE PARTY—CONCLUSIVENESS.**

The introduction of such letter as an admission of an agreement to make advances did not preclude the agent from showing that the agreement was to advance the full amount of the commission, and not one-half thereof, as stated in the letter.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1029, 1043, 1044, 1046; Dec. Dig. ☞265(1).]

**6. INSURANCE ☞85 — AGENTS — BREACH OF CONTRACT BY PRINCIPAL—DAMAGES—EVIDENCE.**

In an action by a life insurance company, evidence *held* sufficient to sustain the court's finding as to the amount of recovery for time lost by the company's failure to make advances as agreed, which prevented the agent from prosecuting his work.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 115; Dec. Dig. ☞85.]

**7. INSURANCE ☞85 — AGENTS — BREACH OF CONTRACT BY PRINCIPAL — DAMAGES — EVIDENCE.**

In an action by a life insurance agent for breach of the company's promise to make advances, testimony that the agent's business was increased, and that he had quite a few prospects worked up, justified the court in concluding that his commissions would have been more than at the beginning of his agency.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 115; Dec. Dig. ☞85.]

**8. INSURANCE ☞85 — AGENTS — BREACH OF CONTRACT BY PRINCIPAL — BURDEN OF PROOF.**

In an action for breach of an insurance company's contract to make advances to its agent, which prevented his working, the burden of proving that he could have gotten advances from some other source to prosecute his work, or could have found employment in some other business, and thereby avoided or reduced his damages, is on the defendant.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 115; Dec. Dig. ☞85.]

**9. INSURANCE ☞84(2)—AGENTS—BREACH OF CONTRACT BY PRINCIPAL—ISSUES.**

In an action by a life insurance agent for special damages for the company's breach of its contract to advance to the agent, as funds with which to continue his work, the amount of his commission in premium notes taken by him, he cannot recover for the balance of commissions included in notes not paid, since the need of the funds ceased when the agent accepted the breach as terminating his contract and sued for damages.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 111; Dec. Dig. ☞84(2).]

**10. INSURANCE ☞85 — AGENTS — BREACH OF CONTRACT OF PRINCIPAL—DAMAGES.**

In an action for breach of an insurance company's contract to make advances to the agent to enable him to continue work, plaintiff could not recover for the loss of the business, given up by him to accept employment with the insurance company.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 115; Dec. Dig. ☞85.]

Appeal from District Court, Wichita County; E. W. Nicholson, Judge.

Action by W. L. Griffith against the San Antonio Life Insurance Company. Judgment for plaintiff for part of the amount sued for, and defendant appeals, and plaintiff files a cross-appeal. Modified by reducing the amount, and affirmed.

John F. Onion, of Dallas, and Carrigan, Montgomery & Britain, of Wichita Falls, for appellant. Chauncey & Davenport, of Wichita Falls, for appellee.

BUCK, J. Suit was brought by W. L. Griffith, appellee, against the appellants, San Antonio Life Insurance Company and Harry L. Seay, liquidating agent of said company,

for damages on account of the alleged breach of a contract by the San Antonio Life Insurance Company, claiming damages and asking for judgment against appellants in the sum of $1,021. Appellee alleged in his petition that on or about August 19, 1914, the San Antonio Life Insurance Company entered into a written contract with him, employing him as an agent of said company to solicit and write applications for life insurance in defendant company, and that plaintiff—

"was to receive compensation for services rendered and to be rendered the said defendant, in commissions hereinafter set out; that said written contract provides when plaintiff should write an application for a policy in said company, and that if said first year's premium was not paid in cash, then said plaintiff was authorized to accept notes from the applicant for said premium on the said policy, which note or notes were to be made payable to plaintiff at San Antonio, Tex., and to be indorsed by plaintiff, and to be immediately forwarded by plaintiff to the defendant company at its home office, and which notes were not to run for a longer period than six months from date thereof; that in the event plaintiff should forward any note or notes which he might receive from applicants for policies in said company, to cover their first year premiums to said defendant, and if same were approved and accepted by the company, then it was agreed between the plaintiff and said company, in said written contract, that said defendant company would handle said note or notes so forwarded and accepted. If it should be found by the court that the word 'handle,' as used in said written contract of employment, is ambiguous and is uncertain in its meaning, then plaintiff says that it was then and there understood by plaintiff and said defendant company that when said defendant approved and accepted note or notes so forwarded by plaintiff, as hereinbefore alleged, then said defendant would immediately advance to plaintiff in Wichita Falls, Wichita county, such sum of money as would equal the amount of commissions to which plaintiff was entitled, as hereinafter set out in said written contract or contracts," etc.

Plaintiff further alleged that he was to receive 75 per cent. commission on all business which he wrote for appellant company, except as to 5 policies written, upon which he was to receive 70 per cent. of the first year's premiums. Plaintiff alleged that he had written some 14 policies for defendant company, and had taken notes in payment thereof, and forwarded the same to defendant company at its home office, and that said notes had been approved and accepted by said defendant company—

"that said defendant company complied with its said contracts, and advanced to plaintiff the sums of money to which he was entitled until on or about the 1st day of November, 1914, at which time said defendant company then and there failed and neglected to advance to plaintiff the sums of money to which he was entitled under said contract, and that, plaintiff then and there being without any funds, and being unable to obtain any from any other source, with which to meet the necessary expense of soliciting and writing applications for insurance in said defendant company, plaintiff was then and there prevented, by the failure of the defendant company to make said advances to which he was entitled under said contracts, from soliciting and writing applications for insurance in said company from on or about November 1, 1914, to

November 15, 1914, and from December 18, 1914, to December 31, 1914, and during the entire month of January, 1915, and from February 1, 1915, to February 15, 1915—all of which facts were well known to said defendant company at that time."

He further alleged that:

"He was earning, and his time was reasonably worth, the sum of $193.25 per month, and he would have earned said amount per month during the time which he lost if the defendant company had made advancements to plaintiff as it had contracted to do."

He further alleged that for some time prior to the execution of the contracts pleaded he had been engaged in the business of fire insurance and real estate in Wichita Falls, and that in order to accept the terms of employment with defendant company, he was forced to give up said business, and that, because of the general business depression prevailing, he was unable to sell the same for any sum of money and was forced to give said business away. He alleged that said business and office fixtures were reasonably worth $538, for which he sued. He further claimed damages for the 2½ months alleged to have been lost by reason of defendant's failure to furnish money in the way of advancements, for which he asked judgment in the sum of $483. He further alleged that defendant was due him the further sum of $180.51 on the first year premium notes, which were approved and accepted by the defendant company, for which he prayed judgment. A jury having been waived, the court rendered judgment for plaintiff in the several amounts hereinafter mentioned, to wit, for loss of time, $482.50, for balance due plaintiff on first year premium notes, $180.51, making a total of $663.01, and denied judgment for the loss of the business and office fixtures as claimed. Defendant appeals, and plaintiff, by cross-assignment, alleges error to the action of the court in denying his claim for damages as to his insurance and real estate business and office fixtures.

It appears that plaintiff, at the instance of defendant, went to San Antonio to discuss the matter of his engagement with said company, and explained to the president of said company that he was without funds to carry on the business, and would require some advancements to be made to him on the first year's premium notes, which he might take. Two contracts were entered into on the same date, but, as the second is the one upon which plaintiff bases his cause of action, we will pretermit any reference to the first contract. The second one is as follows:

"We hereby agree, until further notice, to handle notes accepted by you in settlement of first year's premiums on policies issued for your account, under the following conditions, to wit:

"All notes accepted by you must be payable at San Antonio, Texas, on a form satisfactory to the company; must be payable to you and indorsed by you and immediately forwarded to the home office of the company; must be for the full amount of the first year premiums, and must not run for a longer period than six

months immediately succeeding the date of the same. No note must be accepted by you and forwarded to the company under this agreement, until you have made a thorough examination and satisfied yourself, that the maker of the note is responsible and the note will be duly paid at maturity.

"Everything being satisfactory, when a note for the full first year premium is received by the company, and the policy has been issued and delivered by you, the net amount due by you to the company on account of the premium on the policy in accordance with the terms of your contract, will be charged to your account, such charges to bear interest at the rate of six per cent. per annum until paid.

"Any note or notes forwarded to the company to be held by the company as collateral to your account, and your account to be credited with any and all amounts collected on account of said note or notes, less any cost of collection, until a credit accrues to your said account.

"It is distinctly understood and agreed that until any and all amounts so charged to your account shall have been fully repaid with interest, that same shall constitute a lien upon any and all marginal first year commissions, or any other allowance accruing to you whatsoever, as well as upon any and all credits accruing to your account from any source whatsoever.

"It is further agreed that any note or notes deposited by you hereunder shall not be withdrawn in whole or in part by you, until any amount due by you to the company shall have been paid in full; that in the event of any one of said notes not being paid at its maturity you will pay the amount due on same to this company upon demand; that any extension of time granted by this company, or its agent, on any note or notes turned over to the company hereunder shall be acceptable to you, and your indorsement shall remain on such note whether it is paid promptly or not, you hereby waiving protest on any of said notes; that this company shall not have any liability on account of the noncollection of said notes, but shall only be responsible for the proceeds of same which shall come into its hands at the home office in cash.

"It is further a part of this agreement that in the event of the termination of your contract arrangement with this Company, any balance then remaining unpaid on said account shall thereupon be immediately paid by you to the company in cash with interest, when the company will return to you any collateral notes that it may then have on hand.

"This agreement is subject to the conditions and limitations of your contract."

[1] Without attempting to take up and discuss each of appellant's 13 assignments, and the several propositions under some of them, we will proceed to consider what, in our opinion, are the vital questions involved, one of which is, to wit: Whether the term "handle," as used in the written contract just quoted, and as applied to the notes, is ambiguous, and whether, therefore, parol evidence is admissible to explain the meaning in which said term was therein used. There is no question but that the insurance company did agree to "handle" these notes, and it is evident that in so agreeing it assumed some sort of an obligation. If what follows this promise is explanatory of the meaning of the term "handle," and sets forth the extent of the promise, then the obligation will be limited by and construed in the light of what is contained in the writing after the expression "under the following conditions, to wit." But it appears that the succeeding portions of

185 S.W.—22

the instrument contain, in the main, an enumeration of the stipulations made by the company as a consideration for its promise to "handle." For instance, it is provided how the notes shall be taken, the care to be exercised by the agent in satisfying himself of the responsibility of the makers of the notes, how they shall be indorsed, etc. Every condition therein recited is one that places a burden on the agent, plaintiff, and a compliance by the agent with these requirements is the consideration moving to the company, which is intended to, and does, support its promise to "handle" the notes. Hence, we cannot reasonably hold that the instrument itself explains what is meant by the term "handle." We think the word "handle," as used in this contract, is ambiguous, and therefore parol evidence was admissible to explain its meaning, to shed light on the sense in which it was used and understood by the parties to the instrument. "Ambiguous means doubtful and uncertain." Words and Phrases, citing Osterholm v. Boston & M. Consol. Copper & Min. Co., 40 Mont. 508, 107 Pac. 499.

[2] Ambiguity is also defined, in the same work, as:

"An uncertainty of meaning or expression used in a written instrument; wanting clearness or definiteness; difficult to comprehend or distinguish; of doubtful import" (citing Barrett v. K. & T. Coal Co., 70 Kan. 649, 79 Pac. 150; Novelty Hat Mfg. Co. v. Wiseberg, 126 Ga. 800, 55 S. E. 923; Nindle v. State Bank, 13 Neb. 245, 13 N. W. 275).

[3] Words and Phrases, 919, further says:

"A patent ambiguity in an instrument is an uncertainty that arises at once on a reading; * * * is one produced by the uncertainty, contradictoriness, or deficiency of the language of an instrument."

Certainly no one can tell, from the writing itself, what is meant by the word "handle," what duty or obligation was thereby understood to be assumed by the insurance company, unless its meaning is fixed by other expressions in the instrument itself. Since nowhere else in the contract does the company undertake to do anything which by a reasonable interpretation might be construed as determining the meaning of the word under discussion, recourse may be had to parol evidence to explain such meaning. Kingsbury v. Carothers, 27 S. W. 15, writ of error refused, in 93 Tex. 712, no opinion; Perry v. Smith, 34 Tex. 277; Hamman v. Keigwin, 39 Tex. 34, 45; Railway Co. v. Jones, 63 Tex. 524.

[4] It may shed some light on the question under discussion to refer to the following letter, written by defendant to plaintiff after the controversy as to advancements had arisen, said letter being as follows:

"San Antonio, Texas, December 9, 1914.

"Mr. W. L. Griffith, Wichita Falls, Texas—Dear Sir: We are in receipt of your letter in regard to advance, and beg to call your attention to your contract, under which we agreed to advance you 50% of your commission in notes. Up to the present you have not turned in sufficient notes for us to send you an advance of

$200.00. Am enclosing check for $100.00, and this is slightly exceeding your contract allowance, but we want to do the best that we can for you, and for this reason we are going beyond what the contract calls for.

"I trust that you will succeed this month in securing enough business to cover all your indebtedness to the company in accordance with your contract. With very kindest regards, we are,

"Yours very truly,

"Robinson N. Hodge, Secretary.

"RHN—C. Inclosure."

[5] By the admission on the part of the company that it had agreed in the written contract to "advance 50% of your commissions in notes," it is evident that the word "handle" was given a meaning by the parties to the contract not explained by the instrument itself. While the claim was made in such letter that the advancement to be made was only 50 per cent. of the commissions in notes, and while this letter was introduced by plaintiff, yet it was in the nature of an admission by the adverse party that there had been an agreement to make certain advancements, and plaintiff would not, by the introduction of this letter, be precluded from showing that the contract in fact was intended to provide for the advancement of all of the agent's commissions, nor be bound by the limitation contained in said letter. 1 Greenleaf (1892 Ed.) § 201, pp. 277, 278. The letter having been admitted, it would be for the jury to determine, from all the evidence, First, whether any advancements at all were to be made; and, second, the amount of said advancements. The plaintiff testified upon this point, in part, as follows:

"I told Mr. Hodge (president of the Insurance Company) at that time that unless he could handle my notes I could not go to work for the company. * * * The advances that I was to receive represented my commission whenever I sent it. I was to get my full commission, seventy and seventy-five per cent."

Therefore, we conclude that the court did not err in holding and finding that the word "handle," as used in the contract, was ambiguous and not clear as to its meaning, and in admitting parol evidence as to such meaning, and all assignments, attacking such ruling and findings by the court, are overruled.

[6] We come next to the question, Does the evidence sustain the judgment for $482.50, for loss of time? We are of the opinion, in the condition of the record, we cannot disturb this part of the judgment for want of evidence to support it. Plaintiff, upon this issue, testified, in part, as follows:

"There was a time that the company failed to send me these advances to which I was entitled, and they failed to send me money to which I was entitled about the 1st of November, and when I failed to get this money, I wrote them. * * * I went out to work again about the 15th of November, but did not work in the meantime. I lost all of the time between the 1st and 15th of November, and had no occupation during that time, as my time belonged to them. I also lost about one-half of December, being about the 14th to the last of December. I do not remember just the amount I had coming to me. I know it was away up towards

$300, and they only sent me $100, and that barely paid my expenses. I was out at Seymour writing business, and I had a buggy and a man hired, driving me around to do business for them. When I got my check, I paid my driver and my expenses, and I had enough to go back to Wichita Falls on, but I did not have enough to go out on again. I did not have any funds to solicit business on and pay my expenses from the 14th to the last of December. * * * I received no advances from the company during the month of January, 1915. I had funds coming to me on the 1st of January, 1915, from notes that I had sent in and had been approved by the company. I had sufficient funds coming to me, as my part of the commissions, coming to me from those notes, with which to pay my expenses during the month of January."

He further testified that he lost the time from February 1st to 15th because of lack of funds with which to prosecute the business, and that the company owed him at that time, on notes sent in by him and accepted by the company, sufficient to pay such expenses. He further testified that there were some 50 insurance agents in Wichita Falls, and that, therefore, in order to secure any business, it was necessary for him to go away from Wichita Falls to write insurance, and that he had no funds of his own to meet expenses, and could not obtain funds from any other source; that during the time he worked for defendant company, the amount of his commissions—

"was something near $200 per month, being one hundred ninety some odd dollars per month. My business was getting better at the time I quit working for defendant. I had quite a few prospects worked up out in Baylor county, where I had been working."

[7] In his petition he prayed for $193.25 per month for the time lost. The judgment rendered as to this item, $482.50, is 38 cents more than 2½ months would amount to at $193.25 per month. The court, from the above testimony, would have been justified in concluding that for the time lost, after his business had been worked up, his commissions would have been more than at the beginning of his agency.

[8] Nor do we think the contention can be sustained that because plaintiff was not engaged in other work during the time for which he claims damages, it should be held that the burden was on him to show that he used reasonable efforts to secure other employment, or to secure funds from some other source with which to prosecute the agency under his contract of employment. We think the burden, both as to pleading and evidence, was on defendant to show that plaintiff could have gotten funds from some other source, or could have found employment in some other business, and thereby avoided or reduced his damages. Telegraph Co. v. Sheffield, 71 Tex. 577, 10 S. W. 752, 10 Am. St. Rep. 790; 26 Cyc. 1006, and citation under footnote No. 67; Weber Gas & Gasoline Co. v. Bradford, 34 Tex. Civ. App. 543, 79 S. W. 46; Porter et al. v. Burkett et al., 65 Tex. 383; Allgeyer et al. v. Rutherford, 45 S. W. 628; Telephone Co. v. Bross, 45 S. W. 178; Miller v. Oilmill & Mfg. Co., 166 S. W. 1182;

Bost v. McCrea, 172 S. W. 561; 1 Sedgwick on Damages, § 207, p. 306.

[9] But we now come to the question whether the judgment for the item of $180.-51, alleged to be the amount due plaintiff on the notes accepted by defendant company, can be sustained. Under his pleadings, plaintiff based his cause of action, for special damages, for alleged breach of the contract on the part of defendant to advance him funds with which to prosecute his business as agent. He did not allege, nor was it necessary to allege under the theory of the case upon which he predicated his suit, that the notes in the custody of defendant had been paid. The evidence fails to show that any of said notes had been paid at the time of the trial, except one, as before stated. Hence, as we view it, he could not recover, after the breach had been declared on and suit entered, for the balance of his commissions, included in these notes not yet paid. The need for the advancements ceased when plaintiff accepted the breach as terminating his employment, and sued for damages. Therefore we conclude that the court erred in rendering judgment for plaintiff as to this item.

[10] We do not think the damages claimed by plaintiff because of the loss of his insurance business, had prior to the contract with defendant, are recoverable, and we hold that the court did not err in denying recovery as to this count, and overrule appellee's cross-assignment, directed to the action of the court in so doing.

For the reasons given, we reform the judgment of the trial court so as to exclude the item of $180.51, and, as so reformed, affirm the judgment for $482.50, with interest from date of judgment in the lower court. The costs of this appeal will be taxed against appellee.

Reformed and affirmed.