## HINSON et al. v. NOBLE et al.
### No. 13793.

Court of Civil Appeals of Texas.
Fort Worth.
Dec. 23, 1938.

Marshall & King, of Graham, for appellants.

W. Carroll Barnett, Jr., of Houston, and Fred T. Arnold, of Graham, for appellees.

SPEER, Justice.

This suit grew out of an oil and gas lease and an optional contract alleged to have been executed simultaneously with the lease.

G. D. Hinson and R. V. Tidwell sued W. S. Noble and R. S. Baker in regular form of trespass to try title to the west half of Section T. E. & L. Co. Survey No. 427, Abstract No. 634, in Young County, Texas. The petition discloses that plaintiffs' title consists of an oil and gas lease on the land.

Defendants answered with general denial, plea of not guilty and by a cross action to establish their own title to an undivided one-eighth interest in the minerals, including oil and gas, in, on and under the tract of land. In the cross action they alleged that they had executed an oil and gas lease on each the east and west one-half of said survey. That the lease on the east half was for the consideration that plaintiffs would commence to drill a well thereon before May 16, 1936, and would prosecute the same diligently until a designated sand should be reached, unless oil and gas were produced at a lesser depth; that defendants, with other owners, had also executed a lease to plaintiffs on the west half of said survey, and simultaneously therewith defendants entered into a written contract with plaintiffs, on February 24, 1936, by the terms of which it was provided that if plaintiffs decided to drill a well on said west half within one year after the date of the lease, they would notify defendants of their decision fifteen days before the commencement of such a well, and that defendants should have fifteen days after the receipt of such notice in which to determine whether or not they desired to participate in the drilling of the well upon the basis of an undivided one-eighth interest in the well and lease. That if defendants exercised their option to participate they should give the notice to plaintiffs by registered mail within the time named, and if they did not so give said notice, their option to do so would expire.

Allegations are made that the lease on said west half was so worded that in the beginning thereof it recited the agreement was entered into on November 6, 1935, and immediately above the place for lessors' signatures it recites, "In testimony of which we sign", etc., this November 21, 1935; but that the instrument was signed and acknowledged by the lessors on different dates, subsequent to the one last given. That the last one signed and acknowledged the instrument on May 22, 1936. That the defendants (plaintiffs in cross action) signed and acknowledged said instrument on February 24, 1936, the same day on which they entered into the supplemental contract which gave them the right, under the conditions named, to participate in the drilling of any well attempted by plaintiffs thereon.

It is further alleged in said cross action that plaintiffs did notify defendants, within one year from the date of the lease, that they intended to drill a well on the land and requested defendants to advise them whether or not they desired to participate therein; that defendants advised plaintiffs by telegram, dated December 2, 1936, and within fifteen days from date of notice, that they had exercised their option to participate in the drilling.

Allegations are made that plaintiffs thereafter drilled the well and finished it as a producer of oil and gas in paying quantities, and had refused to permit defendants to pay their pro rata part of the expense of drilling and to participate in the profits derived from the production.

There was a further plea in the alternative, that if the court should hold that the period of time in which defendants could exercise their option to participate in the project, was confined to one year from November 6, 1935 (the first date shown in the lease), then they averred that plaintiffs had, by their acts and statements, waived their right to claim such forfeiture and were estopped to assert it. The facts and circumstances relied upon for the alternative plea are shown to be oral statements made by plaintiffs, in conversations with the defendants subsequent to the expiration of said period of one year. Allegations were made thereunder, to the effect that defendants had relied upon said statements and understood therefrom that plaintiffs had so waived such forfeiture.

Prayer in the cross action was that plaintiffs take nothing by reason of their action in trespass to try title, and that defendants recover a working interest in the lease equal to one-eighth thereof, upon payment by them to plaintiffs of one-eighth of the drilling cost of the well, said drilling cost to be not in excess of $20,000. They further prayed for the reformation of the lease in certain respects and in the alternative for its cancellation, but neither of those matters are involved in this appeal.

There is attached to the petition in cross action a copy of the contract between the parties, alleged to have been executed on February 24, 1936, relied upon by defendants, as conferring the optional rights claimed in their suit. The copy is referred to by all parties throughout their pleadings as defendants' "Exhibit A".

Plaintiff replied to the cross action with general demurrer and several special exceptions, by a general denial and special plea denying agency upon the part of each plaintiff for the other. No issue is presented here involving the plea relating to agency and it will be unnecessary for us to give it further notice. The general demurrer and all special exceptions were overruled by the court and errors are assigned in regard to some of them. They will be noticed in their proper order.

The case was tried to the court without a jury and judgment was entered against plaintiffs in their case of trespass to try title and in favor of defendants on their cross action, quieting their title to an undivided one-eighth interest in the oil lease on the west one-half of said survey, and for one-seventh of seven-eighths of all oil and gas saved and sold from the well in the past, and to be saved and sold in the future, subject, however, to the payment by defendants to plaintiffs of the amount next awarded. That plaintiffs recover of defendants $3,700 as the amount found by the court to be one-eighth of the expense of drilling the well.

Exceptions were taken to the actions of the court in overruling the special exceptions and in rendering the judgment shown; hence this appeal.

We shall continue to give the parties the same designations carried by them in the trial court, irrespective of defendants' cross action. There are no findings of fact and conclusions of law by the court, and we therefore must look to the record for support of the judgment rendered, if it is to be found there.

.Plaintiffs have brought forward ten assignments of error, but have stated in their brief with much frankness that they believe there are only two questions before the court for determination. No criticism is intended for the presentation of ten assignments, for they each present some phase of the two points raised. The points to be determined are:

1. Whether or not the rights of defendants, Noble and Baker, in the oil and gas lease, pleaded by the plaintiffs, expired under the terms of the agreement of February 24, 1936, shown as defendants' "Exhibit A", in their petition of cross action.

2. Whether or not defendants' optional rights were revived by reason of waivers by plaintiffs and estoppel thereunder, if said optional rights under the provisions of the agreement of February 24, 1936, had previously expired.

We, too, believe a determination of these two questions will suffice. In fact, we do not consider the second point is necessarily involved, since there is nothing in the record to show that the court based his judgment on waiver and estoppel.

Plaintiffs' first and second assignments of error complain of the court's action in overruling their ninth and tenth special exceptions. These exceptions complain of named paragraphs of defendants' petition in cross action, while the record before us does not indicate that any one of the paragraphs of the ten page petition is numbered, but there is sufficient quotation of the parts excepted to, contained in the brief to enable us to locate them in the pleading. There was no exception taken to the petition because the paragraphs were not numbered, and we are considering the rulings based on the exceptions shown.

By reference to the petition in cross action, we find that the portions to which the exceptions were directed were alternative pleas, which, in effect, said that if the court should hold defendants could not recover because their option had expired under the terms of the written agreement, then they plead that plaintiffs had, by their acts and statements, waived the right to declare a forfeiture under the agreement, and were estopped to assert the same at this time. The acts of waiver and estoppel were not shown to be evidenced by instruments in writing. It was because of this that the plaintiffs claimed their ninth special exception should have been sustained. And it is urged that the tenth special exception should have been sustained because defendants had alleged in said (alternative) pleading that they had relied upon the oral statements of plaintiffs and understood that no waiver would be claimed, and that such an allegation presented no cause of action to enforce a contract pertaining to the sale of real estate.

If the defendants expressed their desire to participate in the drilling of the well in the manner and within the time provided in the written agreement between the parties, then the alternative pleas would never become important, whether they set up a cause of action or not. Under such conditions, a ruling thereon would be unimportant, and, if wrong, would be harmless. What we shall say relative to the next group of assignments will be sufficient reason for the last statement.

Assignments 3, 4 and 5 may be discussed under one head. No. 3 complains because the court construed the lease contract as being of date May 15, 1936, instead of November 6, 1935, the date shown to be when the agreement was entered into and signed on November 21, 1935. No. 4 challenges the finding of the court that the supplemental agreement called defendants' "Exhibit A", dated February 24, 1936, had not expired when defendants attempted to exercise the option given them thereunder. And No. 5 complains because the court rendered judgment for defendants upon the theory that their right to exercise the option to participate in the drilling contract had not expired under the lease and supplemental agreement referred to as defendants' "Exhibit A".

The lease covering the west half of the survey, the part in controversy here, recites at its beginning: "Agreement, made and entered into the 6th day of November, 1935, * * *". The second paragraph stipulates: "It is agreed that this lease shall remain in force for a term of three years from this date, * * *". At the bottom immediately above the signatures of lessors, it reads: "In testimony whereof, we sign, this the 21st day of November, 1935." The instrument is signed by ten lessors, among whom were defendants here. The certificates of acknowledgment by the respective Notaries show that defendants executed the instrument on February 24, 1936, and all others are shown to be of later dates, ranging from April 24, 1936, to May 12, 1936.

The agreement between plaintiffs and defendants, sometimes referred to by the parties as the supplemental agreement, and again as defendants' Exhibit A, is dated February 24, 1936, and appears to have been acknowledged before a Notary Public on the same day, and recites substantially that defendants had that day executed to plaintiffs an oil and gas lease on the east half of T. E. & L. Co. Survey No. 427, in consideration that plaintiffs would commence to drill a well thereon before May 16, 1936. That defendants had also executed an oil and gas lease to plaintiffs, covering the west half of the survey, in consideration of the following:

"In the event second party (plaintiff Hinson), his heirs, successors or assigns, decide to drill a well upon said west one-half (W ½) of Section 427, within one year from the date of said lease, that being the primary term thereof, second party agrees to notify first parties (defendants) fifteen (15) days before commencing the operations for drilling of said well upon the west one-half (W ½) of said survey. First Parties (defendants) shall thereupon have the option to participate in the drilling of said well, by notifying second party of their intention so to do, in which event First Parties shall have the option of owning an undivided one-eighth (⅛) working interest in the acreage and well by paying one-eighth (⅛) of the cost of drilling the same, which said cost shall not exceed Twenty Thousand ($20,000.00) Dollars. Notice of such intention on the part of First Parties to participate in the drilling of such well may be given by registered mail directly to the said G. D. Hinson, at Graham, Texas, within fifteen (15) days after the date of the receipt from the said G. D. Hinson of notice of his intention to drill such well. In the event Parties of the First Part do not so notify Second Party in the manner aforesaid, said option to participate in the drilling of said well shall expire."

The evidence shows that a number of persons besides defendants had royalty interests in the land covered by the lease and plaintiffs were endeavoring to procure those interests. Some of the owners were minors and it required probate proceedings to be prepared and entered. The form of the lease was written some time before any of them signed it. One of the plaintiffs explains the delay as above indicated. He did not present it to defendants until these other obstacles were either cleared up or he was convinced they would be. Plaintiff took the lease as previously prepared and went to Houston to procure the signatures of defendants, on February 24, 1936. A trade was made with them on that date for their signatures, in consideration of the stipulations in the supplemental agreement which contained the option reserved by defendants to participate in a drilling contract. After defendants signed the lease, other joint owners signed and acknowledged it, the last signing on May 2, 1936. The supplemental agreement shows to be contemporaneous with the lease relied upon by plaintiffs. On November 20, 1936, plaintiffs advised defendants they anticipated drilling on the land and asked them, as they were in duty bound to do, if they desired to participate in the project, and defendants thereafter, within fifteen days, expressed their desire to do so. The information to plaintiffs was transmitted by a telegram, which they admit to have been received, on December 2, 1936. Upon receipt of the telegram, plaintiffs wired defendants in this language: "Since receiving your wire have checked your option agreement and checked date of the lease request you do the same."

We may presume that plaintiffs' reply message was prompted by a desire to justify their acts in refusing to permit defendants to participate in the drilling contract, based upon the wording of the option agreement mentioned. As shown above, that agreement provided that if plaintiffs decided to drill on the land within one year from the date of the lease, the option in favor of defendants would be good, but since their decision to drill was on November 20, 1936, and the lease bore, at the top, as we have shown, a date of November 6, 1935, their decision was not within the year, and therefore the option of defendants had expired. The request to defendants to check their agreement contract no doubt was to call this phase of it to their attention.

We have shown that the lease contract on its face bore two dates, one of November 6, 1935, and the other being November 21, 1935. It is undisputed that defendants actually signed and executed the lease on February 24, 1936, at the time the option agreement was made. Whether or not defendants' option agreement had expired when they expressed their desire to participate, depends upon the real "date" of the lease. If its date was November 6, 1935, then a strict construction of the provisions of the option contract would bar defend-

ants' rights. If the date of the lease was November 21, 1935, or any subsequent date, then defendants' option was effective.

■ Here we find the parties to this suit disputing as to the date of a written contract. It is only when there is room for reasonable minds to differ as to the meaning of language used that a construction thereof is necessary. The term "construction" implies uncertainty as to the meaning of language used in a written instrument. It has been said that where a contract is clear and unambiguous, there is nothing to be construed by the courts. 10 Tex.Jur. p. 272, sec. 158. The lease contract in this case starts out by saying: "Agreement made and entered into on November 6th, 1935", and concludes in the line above the signatures of the signers, "In testimony whereof, we sign this the 21st day of November, 1935." This much is manifest by the instrument itself, to say nothing of the undisputed evidence that it in fact was signed and acknowledged by those sought to be bound, on February 24, 1936. The lease relied upon by plaintiffs was not signed by either of the ten lessors prior to February 24, 1936, when defendants signed it. Other lessors all signed later. Because of the two conflicting dates in the lease, as well as the parol testimony showing when it was in fact signed, together with the recitations in the contemporaneous agreement, render the lease, insofar as its "date" is concerned, clearly ambiguous and uncertain.

■ It is a well settled rule of construction that the terms of a written contract (and all contemporaneous ones pertaining to the same matter) should be left to stand as written, if to do so, the intentions of the parties may thus be ascertained; but because of the matters shown here to exist, this cannot be definitely done. One might say, that from the language used, the parties had agreed on November 6th, that at some subsequent day and upon certain terms, they would execute a lease to plaintiffs, and that on the 21st day of November, they had in fact carried out that "agreement". This, however, would be a rather strained, if not unreasonable, interpretation. The "agreement" referred to being one to convey an interest in land is required by law to be in writing. Even with that construction, the lease itself would be of date November 21st, and the decision by plaintiff to drill was within the year from that date.

■ The rule of construction for ambiguous instruments is laid down in 10 Tex. Jur. p. 277, sec. 162, in this language: "Where a contract is ambiguous or its meaning is doubtful, it will be construed most strongly against the party who drew or wrote it, and was responsible for the language used, especially where it provides for exemptions from liability in his favor."

■ The plaintiffs are shown to have been responsible for drafting the lease. One of them testified that they had the lease prepared at Graham, and that because one of the lessors had married subsequently to her appointment as community survivor, it was necessary to have a guardian appointed for her children, and for other reasons shown, plaintiffs had delayed having the lease executed. To construe the lease as of the date first mentioned therein, as contended for by plaintiffs, will exempt them from liability under defendants' cross action, while to construe it as of "date" November 21st, the last date mentioned therein, will render plaintiffs liable. Under the rule last stated, it should be construed most strongly against plaintiffs. We do not consider that it is necessary for us to determine whether the lease became effective on November 21, 1935, or at the time defendants actually signed it, but if that is controlling we would be inclined to follow the holding in Bettes v. Mid-Texas Petroleum Co., Tex. Civ.App., 243 S.W. 753. In that case it was held that where a party contracted to finish a well within a stated time, under a contract bearing date of February 4th, which contract was not signed until February 19th, the time for its completion began to run on the latter date.

■ There is yet another well recognized rule of construction, which we think is applicable here. It being, that where two or more written instruments, pertaining to the same transaction, are executed at the same time, they are to be construed together. The rule is announced in this language in 10 Tex.Jur. p. 286, section 166: "So, instruments executed at the same time or contemporaneously, for the same purpose, and in the same transaction, are to be considered as one instrument, and are to be read and construed together, and in such case parol evidence is admissible to connect the instruments and explain any conflict between them."

■ Where a contract is ambiguous in its terms, the manner in which the parties

themselves construe it is said to be an accurate criterion. This rule is announced in 10 Tex.Jur. p. 298, sec. 171, in this language: "The construction placed by a person upon his own language constitutes the highest evidence of his intention. * * * The acts of the parties themselves, indicating the construction they mutually placed upon the contract at the time, including acts done in the course of performance, may be considered in interpreting it where it is ambiguous or its meaning is doubtful."

■ We can see no purpose in the minds of plaintiff in calling defendants on long distance telephone on November 20th, and advising them that they, plaintiffs, expected to drill a well on the lease and asking defendants if they expected to participate in the project, if plaintiff had not considered that they were under obligation by virtue of the contract to do so. Defendants told plaintiffs in that conversation that they knew but little about the field and would like to make some investigations; they went to Graham, Texas, and in company with one of the plaintiffs, went over the land and inspected other nearby wells, and later, within fifteen days, wired their decision. We can put no other interpretation upon the acts of plaintiffs except that they were recognizing the existence of defendants' rights under the terms of the written agreement.

■ Under the rules of law mentioned and the facts before the court, he was fully authorized to construe the contract as being of date November 21, 1935. Under that construction, the judgment rendered for defendants on their cross action was supported by the law and facts. The court made no express finding as to the date of the lease contract, and it will be deemed that judgment was rendered upon the law and evidence, which sustain it. Article 2190, Vernon's Ann.Civ.St.

In their briefs, plaintiffs cite us to several authorities, among which are certain text writers, but we do not have access to these. Quotations of extracts are presented, but they are distinguishable from the point before us. They tend to support the theory that if a contingency is dependent upon the date of a written instrument, that date will control irrespective of when it was executed. But nowhere do these authorities say that if there is more than one "date" in the instrument which renders it doubtful and ambiguous in that respect, that the one contended for by plaintiffs here will control.

Among these citations appears the case of Mutual Life Insurance Co. v. Hurni Packing Co., 263 U.S. 167, 44 S.Ct. 90, 68 L.Ed. 235, 31 A.L.R. 102. There a life insurance policy was issued upon an application dated September 2, 1915. The application provided that the policy could be ante-dated not to exceed six months. The policy in fact was issued September 7, 1915, and dated August 23, 1915. It contained an incontestable clause after two years "from its date of issue". On August 24, 1917, a contest of the policy was filed. The court held the contract was not free from doubt, and adhered to the rule above announced by us, and construed the insurance policy most strongly against the company because it was responsible for the ambiguity. In doing so, the court held the "date of issuance of the policy" was that shown therein and not the date on which it was actually issued. We think the case supports the conclusions reached by us here, instead of that of plaintiffs. The assignments of error raising the question are overruled.

Assignments of error Nos. 6 to 10, both inclusive, complain of the action of the court in finding that plaintiffs waived the limitation of time, as provided for in the agreement of February 24, 1936, denominated defendants' Exhibit A, that plaintiffs were estopped to deny the rights therein conferred. The contention being that oral statements by defendants would not constitute a change or otherwise affect a contract required by law to be in writing.

We have previously stated that there are no conclusions of law filed by the court, nor does the judgment recite any findings which indicate that the judgment as entered was based upon waiver or estoppel. If we are correct in the construction that should have been placed upon the written instruments involved, the trial court is presumed to have based his judgment upon the same construction. Article 2190, Vernon's Ann.Civ.St. This being true, we find it unnecessary to pass upon the soundness of the point raised by these assignments, and express no opinion thereon.

Based upon the grounds herein stated, we affirm the judgment of the trial court, and it is accordingly so ordered.