THE SUPERIOR OIL COMPANY ET AL V. STANOLIND
OIL & GAS COMPANY ET AL.

No. A-2767. Decided May 2, 1951.
Rehearing overruled June 27, 1951.
(240 S. W., 2d Series, 281.)

*Stubbeman, McRae & Sealy,* of Midland, *Williams, Lee & Kennerly, Willard B. Wagner* and *Jesse J. Lee,* all of Houston, for petitioner.

The Court of Civil Appeals erred in holding that petitioners (Superior Oil Co., et al,) did not have the right until March 3, 1949, to pay the rental or to commence the drilling of a well, and in holding that their lease had terminated for failure to pay rentals before Feb. 3, 1949. Humble Oil Co. v. Harrison, 146 Texas 216, 205 S.W. 2d 355; Highland Farms v. Fidelity Trust, 125 Texas 474, 82 S.W. 2d 627; Humble Oil Co. v. Millican, 144 Texas 609, 192 S.W. 2d 770.

*Turner, Rodgers, Winn, Scurlock & Terry, C. Sidney McClain, P. E. Ponder, John Sentell* and *Carlton R. Winn,* all of Dallas, and *Donald Campbell* and *L. A. Thompson,* of Tulsa, Okla., for respondents.

According to the previous payments made by the parties to the lease on or before Feb. 3, showed their intention that that was date on which rental payments should be made, and, therefore, not having made the payment by that date, the lease ipso facto terminated. Rio Bravo Oil Co. v. Weed, 121 Texas 427, 50 S.W. 2d 1080; Hinson v. Noble, 122 S.W. 2d 1082; Cowden v. Broderick & Calvert, 131 Texas 434, 114 S.W. 2d 1166.

MR. JUSTICE GRIFFIN delivered the opinion of the Court.

On March 3, 1944, J. O. Dodson, et al, owners, executed to P. W. Anderson an oil and gas lease on a section of land located in Scurry and Borden Counties for a primary term of 10 years. They used a printed form described as "C-88 R-Producers' 88 Special-Texas Form." The dispute between the parties is determined by the proper construction of the primary terms, rental and dry hole provisions of the lease, which are, respectively:

"It is agreed that this lease shall remain in force for a term of 10 years from this date, said term being hereinafter called 'Primary Term', and as long thereafter as oil or gas, or either of them is produced from said land by the lessee.

"* * *

"If no well be commenced on said land on or before the 3rd day of March, 1945, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor, or to the lessor's credit in the Snyder National Bank at Snyder, Texas, or its successors, * * * which shall continue as the depository, regardless of changes in the ownership of said land, the sum of Three Hundred Twenty and no/100 Dollars, which shall operate as rental and cover the privilege of deferring the commencement of a well for twelve (12) months, from said date. In like manner and upon like payments or tenders the commencement of a well may be further deferred for like periods of the same number of months successively. And it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privilege granted to the date when said first rental is payable as aforesaid, but also the lessee's option of extending that period as aforesaid, and any and all other rights conferred.

"Should the first well drilled on the above described land be a dry hole, then and in that event, if a second well is not commenced on said land within twelve months thereafter, this lease shall terminate as to both parties, unless the lessee on or before the expiration of said twelve months shall resume the payment of rentals in the same amount and in the same manner as hereinbefore provided. And it is agreed that upon the resumption of the payment of rentals, as before provided, that the last preceding paragraph hereof, shall continue in force just as though there had been no interruption in the rental payments."

On August 21, 1944, Anderson assigned this lease to Richfield Oil Corporation (hereafter called "Richfield"), which began drilling a well on January 10, 1945, and completed it as a dry hole on February 3, 1945. On January 28, 1946, Snyder National Bank received from Richfield a check for $320.00, which the letter of transmittal described as being "in payment of delay rentals for the period of February 3, 1946 to February 3, 1947 due" under the Anderson lease. By endorsement on this letter, the bank acknowledged receipt of the check, stating that it "has been credited according to your instruction", sent a copy to "J.O. Dodson et al., Snyder, Texas", and returned the original to

Richfield. The same procedure was followed when, on January 29, 1947, Richfield sent a check for $320.00 to the bank to pay delay rentals due under the lease "for the period of February 3, 1947 to February 3, 1948," and again when, on January 19, 1948, Richfield sent a check for $320.00 to the bank to pay delay rentals due under the lease "for the period of February 3, 1948 to February 3, 1949."

Deciding to sell its Texas oil and gas leases, Richfield published notice inviting bids for them. The leases in Borden and Scurry Counties were described as Tract 5 and included the section covered by the Anderson lease. This notice, dated October 15, 1948, stated that all bids received would be publicly opened at Richfield's Midland office and the highest cash offer would be accepted; it stated that the original leases, assignments, title opinions and all title data in Richfield's hands were available for inspection by prospective bidders, at its Midland office; that each bidder must satisfy himself regarding the leases without regard to information or assistance furnished by Richfield; and that lease assignments would be without warranty of any kind. The Superior Oil Company (hereafter called "Superior") and Intex Oil Company (hereafter called "Intex") bid in the Tract 5 leases together. On December 1, 1948, Richfield assigned the Anderson lease to Intex, "without warranty of any kind", and on December 30, 1948, Intex assigned an undivided interest in it to Superior.

On December 15, 1948, Richfield delivered to Intex papers relating to the lease and these included the last rental receipt above mentioned showing payment of delay rentals for the period of February 3, 1948 to February 3, 1949; and on January 14, 1949, it delivered to Superior the other two receipts showing such payment for the periods from February 3, 1946 to February 3, 1947, and from February 3, 1947 to February 3, 1948.

On February 5, 1949, Superior and Intex tendered payment of the annual rental to the Snyder bank but the tender was refused, under lessors' instructions, because payment had not been made by February 3. Before March 3, 1949, Superior and Intex began drilling a second well on the lease land.

On August 9, 1947, J. O. Dodson et al. executed to one Jordan a warranty deed conveying to him the surface estate and one-half the minerals in the section covered by the Anderson lease. This deed also contained a power of attorney authorizing Jordan,

when the land was not under lease, to execute oil and gas leases on all or any part of the land covering their interest as well as his own.

On March 9, 1949, Jordan executed to Stanolind Oil & Gas Company (hereafter called "Stanolind") an oil and gas lease on the whole section.

Thereafter Stanolind and Jordan, respondents, filed this suit against Superior, Intex and others, petitioners, to recover title and possession of both surface estate and minerals in the land and to enjoin them from drilling an oil well or otherwise trespassing thereon. Under our conclusions, it is sufficient to say that, when the pleadings were all in, the issue was whether the original Anderson lease, under which petitioners claim, was still in effect when petitioners started drilling a second well on the land after February 3, but before March 3, 1949.

A trial court judgment for respondents was affirmed by the Court of Civil Appeals. 230 S.W. 2d 346.

The Court of Civil Appeals held that the language of the lease was free of ambiguity; that it "plainly and expressly required commencement of a second well or payment of rental within twelve months after the date of the dry hole"; that, as the dry hole was drilled February 3, 1945, payment of rental within twelve months did not keep the lease alive for thirteen months; that, after the dry hole, commencement of a well or payment of rental every twelve months was required; that neither action could keep the lease alive for more than twelve months.

Writ of error was granted on two points, the first being that the Court of Civil Appeals "erred in holding that petitioners did not have the right until March 3, 1949, to pay the rental, or to commence a well, under the lease that provides 'and it is agreed that upon the resumption of the payment of rentals * * * the last preceding paragraph hereof' (said March 3 rental paragraph) 'shall continue in force just as though there had been no interruption in the rental payments' ". The second point complains that the Court of Civil Appeals erred in holding that their lease had terminated for failure to pay rentals.

■ A majority of the court is unable to agree as to the meaning of the "dry hole clause", and the construction to be given to it with regard to the payment of delay rentals. The writer

of this opinion and some members agree with the construction of the Court of Civil Appeals, while other members of the court disagree. However, a majority of the court are in agreement that this provision of the lease is ambiguous, and, that being ambiguous, the construction placed thereon by the parties to the lease (Richfield and the lessors) for three years and long prior to this litigation is the construction to be given to the lease by this court, and that Intex and Superior are bound by such construction.

At best the meaning of the lease is doubtful and it is capable of two constructions. This being true, the lease contract is ambiguous. San Antonio Life Ins. Co. v. Griffith, Tex. Civ. App., 185 S.W. 335, no writ history; Business Men's Assurance Ass'n. v. Read, Tex. Civ. App., 48 S.W. 2d 678, no writ history; Tom v. Robertson, Tex. Civ. App., 182 S.W. 698, writ refused; Anderson & Kerr Drilling Co. v. Bruhlmeyer, 134 Texas 574, 136 S.W. 2d 800, 127 A.L.R. 1217; Curry v. Texas Company, Tex. Civ. App., 8 S.W. 2d 206, writ dismissed; Galveston, H. & S. A. Ry. Co. v. Johnson, 74 Texas 256, 11 S.W. 1113.

In construing the lease we must find the intention of the parties. Rio Bravo Oil Co. v. Weed, 121 Texas 427, 50 S.W. 2d 1080, 85 A.L.R. 391; Hinson v. Noble, Tex. Civ. App., 122 S.W. 2d 1082, no writ history; Curry v. Texas Company, supra; Carey v. Texas Pacific Coal & Oil Co., 237 S.W. 309, writ refused.

The trial court, by its Finding of Fact No. 12 and Conclusion of Law No. 6, found that the lease was ambiguous, and the parties had given it a construction. There can be no question but that Richfield (Intex and Superior's immediate grantee) and the Dodsons, lessors, construed the "dry hole clause" to fix February 3rd as the anniversary paying date. For three years, February 3, 1946 to February 3, 1947; February 3, 1947 to February 3, 1948 and February 3, 1948 to February 3, 1949, Richfield sent to the Snyder Bank the rental payments which the Dodsons accepted, accompanied by a letter specifically stating that such payment covered a twelve months period, beginning February 3, 1946 and ending February 3, 1947, the same being true of the two succeeding consecutive years. The parties have construed this lease, and since it is ambiguous, the courts will follow the construction given by the parties.

This court said in Lone Star Gas Co. v. X-Ray Gas Co., 139 Texas 546, 164 S.W. 2d 504; loc. cit. (5-7) 508:

"The original parties to the contract, and also the trial court, construed such contract as contended for by the defendant; while the Court of Civil Appeals, with considerable difficulty, construed it as contended for by plaintiffs. If there is any doubt as to the meaning of a contract like the one before us, the courts may consider the interpretation placed upon it by the parties themselves. In this instance the acts of the parties themselves indicated the construction they mutually placed upon the contract at the time, including the acts done in its performance, and same is entitled to great if not controlling weight. Courts will generally follow the interpretation of the parties to a doubtful contract. The practical construction placed upon a contract by the parties themselves constitutes the highest evidence of their intention that whatever was done by them in the performance of the contract was done under its terms as they understood and intended same should be done. Galveston, H. & S. A. R. R. Co. v. Johnson, 74 Tex. 256, 11 S. W. 1113; E. H. Perry & Co. v. Langbehn, 113 Tex. 72, 252 S. W. 472; San Antonio St. Ry. Co. v. Adams, 87 Tex. 125, 26 S. W. 1040; Rio Bravo Oil Co. v. Weed, 121 Tex. 427, 50 S. W. 2d 1080, 85 A. L. R. 391; Neblett v. Armstrong, Tex. Com. App., 26 S. W. 2d 166;, 75 A. L. R. 577; Cooley v. Buie, Tex. Com. App., 291 S. W. 876; 10 Tex. Jur., p. 298, Sec. 171; 17 C. J. S., Contracts, Sec. 325, p. 755, Sec. 325; 12 Amer. Jur., p. 787, Sec. 249."

Superior and Intex were bound by this construction placed on the lease by the parties.

■ Prospective bidders were advised that they should carefully read and consider the documents of record affecting the land, examine the title status and familiarize themselves with all of the conditions relative thereto. Prospective bidders were notified that each bidder must satisfy himself on all matters concerning the leases independently of any information or assistance furnished by Richfield.

Before the rentals were due on February 3, 1949, Intex and Superior had in their possession the Richfield files which contained the rental receipts reciting that the annual rental payments for the three years preceding February 3, 1949 were paid on or before February 3rd of each of said years for the privilege of deferring commencement of a well from February 3rd of one year to February 3rd of the following year, and disclosing that the lessors and Richfield had construed the lease to require rentals to be paid on or before February 3rd of each year after the dry hole. Superior and Intex were invited by Richfield to

look at their records before they bought. Houston Oil Company of Texas v. Hayden, 104 Texas 175, 135 S.W. 1149; Brush v. Ware, 15 Pet. (40 U. S.) 93, 10 L. Ed. 672; Hexter v. Pratt, Com. App., 10 S.W. 2d 692; Flack v. First National Bank, Dalhart, Texas, 148 Texas 495, 226 S.W. 2d 628; 31 Tex. Jur., p. 362; Brown v. Hart, Tex. Civ. App., 43 S.W. 2d 274, writ refused.

Not having paid the delay rentals by the date they were due under the "dry hole" provisions of the lease, as construed by Richfield and the lessors, the determinable fee title held by Superior, et al, automatically came to an end. Humble Oil & Refining Company v. Davis, Com. App. 296 S.W. 285; Stephens County v. Mid-Kansas Oil & Gas Co., 113 Texas 160, 254 S.W. 290, 29 A. L. R. 566; Caruthers v. Leonard, Com. App., 254 S.W. 779; Reynolds v. McMan Oil & Gas Co., Com. App., 11 S.W. 2d 778; Waggoner Estate v. Sigler Oil Co., 118 Texas 509, 19 S.W. 2d 27; Walker, "The Nature of Property Interests Created by an Oil and Gas Lease in Texas", 8 Tex. Law Rev. 521.

■ We agree with the Court of Civil Appeals that after the Dodsons sold an undivided one-half interest in the minerals and all of the surface on August 9, 1947, by deed giving Jordan a power of attorney to lease all the minerals, Jordan's lease to Stanolind dated March 9, 1949, was valid and binding; and that the attempted ratification of petitioners' lease by one Boyle, who had acquired his interest in the minerals afterwards, (December, 1948) was of no force and effect.

The judgment of the Court of Civil Appeals is in all things affirmed.

Opinion delivered May 2, 1951.

MR. JUSTICE BREWSTER, joined by Justice Smith, dissenting.

I am convinced that the lease involved here is not ambiguous and that when Superior and Intex, as assignees, began a second well on the land before March 3, 1949, the Anderson lease was valid and subsisting.

The rental paragraph, quoted in the majority opinion, provided that if no well was commenced on the land on or before March 3, 1945, the lease should terminate unless lessee had sooner paid lessors $320 or deposited that amount to their credit in the Snyder bank; that by such payment lessee could defer commencement of a well until on or before March 3, 1946; and

that upon like payments thereafter commencement of a well could be deferred to March 3 of each succeeding year throughout the primary term. In short, lessee could hold the lease for 10 years without ever commencing a well by paying $320 on or before March 3, of each year.

Under the dry-hole paragraph, if lessee shouldered the more expensive burden of drilling a well, he was relieved of his obligation to pay the annual rental on the succeeding March 3; but if the well proved to be a dry hole he was required either to commence a second well within 12 months thereafter or pay lessors $320, evidently to insure that his failure to bring in a well had not discouraged him to the point of abandoning the lease. When he had resumed payment of rentals, *"as before provided"*, that is, within 12 months after drilling a dry hole instead of an oil well, then "the last preceding paragraph hereof (the rental paragraph), shall continue in force *just as though there had been no interruption in the rental payments."* I assume that this meant that the entire rental paragraph, not just part of it, should "continue in force."

So, when Richfield completed the dry hole on February 3, 1945, it was required to pay $320 rental to lessors by Feb. 3, 1946, which it did by depositing that amount to lessor's credit in the Snyder bank. When that was accomplished, the effect of the dry hole as well as the force of the dry-hole paragraph was spent and the "last preceding paragraph" (the rental paragraph) was again operative, to "continue in force just as though there had been no interruption in the rental payments." Under its clear and explicit terms Richfield could keep the lease alive for 10 years without ever attempting to drill any well by paying $320 on or before March 3, of each year, beginning March 3, 1945. Therefore, the rental paragraph can be continued "in force just as though there had been no interruption in the rental payments" only by holding that after Richfield completed the dry hole and resumed payment of rental within 12 months thereafter, it could keep the lease alive by paying the annual rental on or before March 3, 1947, and on or before March 3 thereafter during the term of the lease in lieu of drilling another well. I think the accelerated payment made on Jan. 28, 1946, met the dry-hole condition and also paid the rental due by March 3, 1946, because only thus can effect be given to the entire language of both the dry-hole and rental paragraphs.

The majority holding penalizes lessees for attempting to develop the lease, which development doubtless was the primary

purpose of the lessors, by drilling a well which proved to be a dry hole and which surely cost lessees many times the $320 they otherwise would have been bound to pay by March 3, 1945. Rather than abandoning the lease after drilling the dry hole they showed their faith in it by paying the $320 within 12 months thereafter exactly as the lease required. Having done that, they had the right to pay rentals thereafter, beginning on or before March 3, 1947, *"just as though there had been no interruption"* in their payment. Otherwise, the last sentence of the dry-hole paragraph would mean nothing.

That Richfield may have treated the rental as due by Feb. 3, of each year, after "resumption of the payment of rentals" cannot defeat the rights acquired by its assignees, Superior and Intex, when they purchased the lease, because, there being no ambiguity in the instrument, "resort cannot be had to an interpretation given by the parties to the terms of the agreement in order to prove a construction contrary to the plain meaning." Highland Farms Corp. et al. v. Fidelity Trust Co., 125 Texas, 474, 481, 82 S. W. 2d 627, 630.

I would render the judgment for petitioners.

Associate Justice Smith joins in this dissent.

Opinion delivered May 2, 1951.

Motion for rehearing overruled June 27, 1951.