**JACOBS et al. v. CHANDLER et al.**

No. 6195.

Court of Civil Appeals of Texas. Amarillo.

Feb. 25, 1952.

Rehearing Denied March 31, 1952.

Sanders, Scott, Saunders & Smith, Amarillo, Tuesburg & Armstrong, Pontiac, Ill., for appellants.

Underwood, Wilson, Sutton, Heare & Boyce, Amarillo, Daniel A. Costigan, Chicago, Ill., for appellees.

LUMPKIN, Justice.

This suit in trespass to try title was filed by the appellants, Royal W. Jacobs and the other children and heirs of James B. Jacobs and Dollie B. Jacobs, both deceased, against the appellees, Bessie Chandler and her children by D. H. Chandler, deceased, to establish title to a section of land situated partly in Potter County and partly in Randall County, Texas. (In their peti-

tion the appellants also named as defendants others whose interests are not material to this appeal).

The solution of this case depends primarily upon the construction given two deeds. Each deed involves the same land, each names D. H. Chandler as grantor and each names J. B. Jacobs as grantee. The description in the two deeds is virtually the same; the only material difference to be found in the deeds is the consideration. Both Chandler and Jacobs were citizens of the State of Illinois.

The appellants alleged that because of these two deeds the record title to the land was vested in them, while the appellees pleaded that the two deeds did nothing more than vest half of the record title in the appellants and left the other half of it in the appellees. Originally, the property was patented to James A. Dickenson, who conveyed it to A. W. Evans, who in turn conveyed it to John Doyle, who conveyed it to D. H. Chandler, the appellees' predecessor in ownership. The deed from Doyle to Chandler recites a consideration of $9,600, of which $3,200 was paid in cash and the balance of $6,400 was evidenced by three notes, each of which was dated March 4, 1907, and was due on or before one, two or three years from that date. The first two notes were in the amount of $2,133 each, while the third note was in the sum of $2,134. (On July 5, 1927, this third note came into the hands of J. B. Jacobs).

On March 1, 1909, D. H. Chandler and his wife, Bessie Chandler, executed the first of the two deeds involved in this case. It names J. B. Jacobs as grantee and recites the consideration thus:

"Eight thousand dollars cash in hand and one note for Two Thousand one hundred thirty four Dollars ($2,-134.00) due on or before 1–2–3 years from date, said note executed by D. H. Chandler and payable to order of John Doyle, said note bearing interest at the rate of 8% per annum from date until maturity; 10% per annum from maturity until paid; interest payable annually; and providing for an additional amount of 10% as attorneys fees if placed in the hands of an attorney for collection."

The deed describes the property conveyed:

"The undivided half interest in a certain tract of land in Randall County and Potter County, Texas, known as abstract No. 33 and abstract No. 974, survey No. 53, certificate No. 653, block No. 2, grantee A. B. & M., containing 640 acres of land, being 134 acres in Randall County and 506 acres in Potter County, Texas, as shown by State Printed Abstract Book No. 27, on pages No. 183 and 178, respectively."

(Mrs. Chandler's acknowledgment to this deed is not in the statutory form prescribed for a married woman in Texas).

On May 3, 1909, D. H. Chandler and Bessie Chandler executed the second deed, which likewise names J. B. Jacobs as grantee. It describes the consideration thus:

"Forty eight hundred dollars paid and secured to be paid by J. B. Jacobs, as follows: cash in hand paid the sum of $3,733.50, the receipt of which is acknowledged, and the assumption and agreement to pay an undivided one half of a certain note signed by said D. H. Chandler, payable to order of Jno. Doyle, dated Mch. 4, 1907, due three years after said date, 08% interest, 10% atty. fee clause; draws 10% interest after due, for the sum of $2,134.00, and is the last note shown in deed to said Chandler by said Doyle of same date, the other two notes being paid; said deed recorded in Vol. 32, page 416 of Potter County Deed Records, and here referred to."

The property is described as follows:

"All that certain one undivided one half of the following tract of land, situated in Randall and Potter Counties known as abstract No. 33 and abstract No. 974, survey No. 53, certificate No. 653, block 2, A. B. & M. grantee, containing 640 acres of land, of which

134 acres is in Randall County and 506 acres in Potter County, Texas, shown by State Printed Abstract Book No. 27, on page 183 and 178, respectively."

(The acknowledgment to this second deed is in the statutory form prescribed for a married woman in Texas).

The second deed, i. e., the deed of May 3, 1909, was filed for record in Potter County on March 5, 1910, but the first deed— i. e., the deed of March 1, 1909—was not filed for record in Potter County until June 28, 1926.

In addition to alleging a regular chain of title to the land, the appellants sought to establish their title by adverse possession and, in the alternative, sought to foreclose the unpaid vendor's lien note. The appellees by cross-action also sued in trespass to try title, asked for a partition and asked for an accounting of rents and revenues which the appellants had received after 1932 to the exclusion of the appellees.

Trial was to a jury. In answer to special issues the jury found that it was the intention of the original parties, D. H. Chandler and J. B. Jacobs, that only the deed of May 3, 1909, should be recorded and that only one-half interest in the land should vest in Jacobs. The jury further found that the appellants held the section of land under the three, five and ten-year statutes of adverse possession.

Special Issue No. 5, which was submitted to the jury, reads as follows:

"What amount of money, if any, do you find from a preponderance of the evidence, to be due plaintiffs, Royal W. Jacobs and others, in payment of the one-half part of note No. 3, in the amount of $2,134 described in the deed of May 3, 1909, computing interest in each year following payment of said note, if it was paid, by J. B. Jacobs upon whatever was paid by Jacobs with respect to said one-half part, but allowing credit in each year for the one-half part of any rentals paid remaining after the payment of any taxes paid therefrom? Answer by stating the amount, if any, found by you."

In answer to this issue the jury wrote this sum: $8,820.75."

The trial court granted the appellees' motion for judgment non obstante veredicto and disregarded the jury's findings on adverse possession and entered judgment awarding the appellees an undivided one-half interest in the section of land subject, however, to the obligation to reimburse the appellants in the amount of $8,821.75, together with interest and an attorney's fee of $882.08. The court decreed that the other undivided one-half interest belongs to the appellants. The court then ordered the land partitioned, appointed a receiver, and ordered the whole section of land sold. In addition to the amount the appellants would receive for the sale of their one-half interest, the court further decreed that they be paid the sum of $8,821.75, together with interest and an attorney's fee of $882.-08, from the money obtained by the appellees as a result of the sale of their undivided one-half interest. The balance of the proceeds thus obtained was to be paid to the appellees. From this judgment the appellants have duly perfected this appeal.

On this appeal the appellants contend that since each of these deeds conveyed a separate half interest, together they convey to J. B. Jacobs the entire title to the section of land; or, if this be not true, then they insist they have acquired the appellees' half of the property by adverse possession. The appellees, on the contrary contend that it is obvious from the face of the two deeds that they convey not separate one-half interests but the same undivided one-half interest only; that the deed of May 3, 1909, was a correction deed; or, if this be incorrect as a matter of law, then the deeds are ambiguous since they may be construed as conveying either separate half interests or the same half interest; therefore, parol evidence is admissible to resolve the ambiguity. But the appellants insist that before the appellees may assert such a position, they must first plead and prove that one of the deeds was the result of fraud, accident, mutual mistake or ambiguity and that it must be set aside or reformed. The appellants have pleaded

the four-year statute of limitation which they allege bars the appellees from setting aside or reforming either of the two deeds.

It is our opinion, at the outset, that the second deed, dated May 3, 1909, is nothing more than a correction deed executed in lieu of the first deed dated March 1, 1909. The two deeds do not convey separate interests, but each deed describes and conveys the same undivided half interest in the same section of land. The only material difference in the two is the consideration. If it had been intended that the second deed convey a half interest separate from that conveyed by the first deed, then why did not the grantee Jacobs assume the entire indebtedness owed by Chandler to Doyle rather than agree to pay only one-half of the note payable to Doyle and signed by Chandler? The fact that Jacobs agreed to pay only one-half of the third and last note to Doyle indicates to us (1) that Jacobs was acquiring a one-half interest in the land and not the full title, and (2) that the one-half interest conveyed by the second deed was the same one-half interest conveyed by the first deed. Moreover, the deed of March 1, 1909, shows on its face why a deed was necessary. In the first place the deed of March 1, 1909, contains an inaccurate description of the debt Jacobs was to assume; and in the second place Mrs. Chandler did not acknowledge her signature in the manner prescribed in Texas for a married woman.

Our courts have held that the dominant purpose in construing a deed is to ascertain the intentions of the parties as expressed in the deed itself. Benskin v. Barksdale, Tex.Com.App., 246 S.W. 360, 363; Rio Bravo Oil Co. v. Weed, 121 Tex. 427, 50 S.W.2d 1080, 1087; Sun Oil Co. v. Burns, 125 Tex. 549, 84 S.W.2d 442, 443; Dallas Joint Stock Land Bank of Dallas v. Harrison, 138 Tex. 84, 156 S.W.2d 963. After reading the two deeds, we believe that each describes and conveys the same undivided one-half interest in the land.

But even if we were to agree that the intent of the parties as expressed in the deeds is ambiguous and even if we wei : to assume that the two deeds may convey the entire title to the section of land, nevertheless the true intentions of the parties is, in our opinion, clear from the facts surrounding the deeds. The appellants insist that the court erred in allowing the appellees to introduce parol or extrinsic evidence to explain the deeds. As a rule where the terms of a written instrument are plain and unambiguous, parol evidence is not admissible to vary the terms or to show the manner in which the parties construed them. But the rule is not the same if the terms are ambiguous. Under such circumstances, parol evidence is admissible to explain the meaning so that the court may arrive at the true intent of the parties. Murphy v. Dilworth, 137 Tex. 32, 151 S.W.2d 1004, 1005; Humble Oil & Refining Co. v. Mullican, 144 Tex. 609, 192 S.W.2d 770; 14 Tex.Jur. 1049.

In our opinion the parol evidence establishes the fact that the parties intended that only one-half interest in the land should vest in Jacobs. The second deed was the first filed for record; the first deed, however, was not filed for record until June 28, 1926. The appellant Royal W. Jacobs explained the circumstances under which the first deed was filed. He said that in 1926 his father, J. B. Jacobs, suffered a paralytic stroke and was ill until his death in 1932. He stated that in 1926, after the appellant had taken charge of his father's affairs, he found the March 1, 1909, deed among his father's papers. Immediately he came to Amarillo and filed that deed for record. The record reveals that from 1909 until 1922 Chandler was paying the taxes on the land and that even as late as January 1, 1929, J. B. Jacobs paid the Randall County taxes for himself and Chandler. On May 13, 1913, John Doyle transferred to the Bank of Emington, Illinois, the third of Chandler's notes. On July 5, 1927, the Taylor State Bank, successor to the Bank of Emington, assigned this note to Jacobs.

Other events occurred which indicate that the parties recognized a common ownership of the land. In 1909 Chandler was executing oil and gas leases to it, and even as late as 1932 the appellant, Royal W. Jacobs, as the administrator of his father's estate, listed in the inventory and appraise-

ment an undivided one-half interest in the section of land. In this same inventory he listed a vendor's lien note which was secured by Chandler's one-half interest in the Texas land. From this and other evidence the jury concluded that the parties, D. H. Chandler and J. B. Jacobs, intended that only the second deed should be recorded and that a one-half interest in the land should vest in Jacobs; thus they resolved the ambiguity, if any, in favor of the appellees.

■ Our courts have held that the four-year statute of limitation does not apply to actions where there is no occasion to set aside or reform a deed. Austin v. Austin, 143 Tex. 29, 182 S.W.2d 355; Lott v. Van Zandt, 107 S.W.2d 761, 763; Binford v. Snyder, 144 Tex. 134, 189 S.W.2d 471. Since in this case it was not necessary to set aside or reform either of the deeds to arrive at the true intention of the parties, the four-year statute has no application.

■ The appellants charge the trial court with error in disregarding the jury's finding that the appellant held the section of land under the three, five and ten-year statutes of adverse possession. Since the deeds have been construed as conveying to Jacobs an undivided one-half interest only, the trial court properly concluded that the three-year statute of limitation was not applicable. Our Supreme Court, in the case of Burnham v. Hardy Oil Co., 108 Tex. 555, 564, 195 S.W. 1139, 1142, held that the three-year statute of limitation, Article 5507, Vernon's Annotated Civil Statutes, does not apply if there is any break in the chain of title. In this case the appellants' unbroken chain of title from the sovereignty is limited to the one-half interest in the land which was conveyed by Chandler to their father. The unbroken chain of title does not extend to the remaining one-half interest which was retained by Chandler and, in our opinion, the trial court did not err in concluding that the jury's answer to special issue No. 2 was immaterial to a proper judgment. Likewise, the trial court was correct in ignoring the jury's answer to special issue No. 3 and holding that the five-year statute of limitation, Article 5509, Vernon's Annotated Civil Statutes, did not

apply to this case. The principle involved is stated by the Commission of Appeals in the case of Martinez v. Bruni, Tex.Civ. App., 235 S.W. 549, 551:

"In none of these deeds under which he claims is the land described by metes and bounds. The deeds only purport to convey the undivided interest of the grantors. In none of them is the entire Borrego tract attempted to be conveyed. It has been definitely decided in this state that a deed to an undivided interest will not, under the 5-year statute of limitation, protect the grantee beyond the interest it, on its face, purports to convey."

Acklin v. Paschal, 48 Tex. 147; Thomas v. Southwestern Settlement & Development Co., Tex.Civ.App., 131 S.W.2d 31, 34, dism. judg. corr. Since the deeds conveyed to J. B. Jacobs a one-half interest only, the five-year statute will not protect the appellants beyond the interest stated in the instruments. However, there is another reason why the five-year statute is not applicable. Appellees' cross-action was filed on July 5, 1950. The appellants' proof including the payment of taxes, therefore, must embrace the period from July 6, 1945, through July 6, 1950. Taxes are delinquent if not paid prior to February 1st of the year immediately following. For the first year of the period, 1945, the proof does not show that the taxes were paid before they became delinquent. The trial court did not err in disregarding the jury's finding to special issue No. 3. Article 7336, Vernon's Annotated Civil Statutes; Houston Oil Co. of Texas v. Howard, Tex.Com.App., 294 S.W. 848; Gramm v. Coffield, Tex.Civ. App., 116 S.W.2d 1089, dism.

■ Next the appellants insist that the trial court erred in disregarding the jury's answer to special issue No. 4. In answer to that issue the jury found that Royal W. Jacobs and others had been in peaceable and adverse possession of the land, cultivating, using or enjoying the same for a continuous period of 10 years after August 1, 1932, and prior to the filing of the appellees' cross-action on July 6, 1950. Since the two deeds did nothing

more than vest Jacobs with a one-half interest in the land, the appellants and appellees have been cotenants throughout the years. When did the appellants' possession become adverse to the appellees? Certainly not by any act of J. B. Jacobs for he never repudiated Chandler's title to a one-half interest. Adverse possession, if any, must have begun after Jacobs' death in 1932. But the appellants' possession was not adverse to the appellees for a period of 10 years after August 1, 1932. This court has held that repudiation alone will not set in motion the ten-year statute of limitation. Article 5510, Vernon's Annotated Civil Statutes. The tenant not in possession must have actual notice of the tenant's adverse possession, or the adverse claim of the tenant in possession must be so unequivocal as to charge the tenant out of possession with knowledge of it. Fulcher v. Carter, Tex.Civ.App., 212 S.W.2d 503; Crosby v. Hughes, Tex.Civ.App., 212 S.W. 2d 513. And, the burden of proving every essential fact rests upon the claimant. Thomas v. Ash, Tex.Civ.App., 199 S.W. 670, 673. The record in this case reveals that the appellees did not know of the appellants' adverse claim until February, 1944, when a lawsuit was filed in the State of Illinois. On the trial of that case Royal W. Jacobs testified that he and his family owned all of the Texas land to the exclusion of the appellees. But the appellants argue that the filing of the deed in 1926 was sufficient notice to start the statute running. Under the holding in Bruni v. Vidaurri, 140 Tex. 138, 166 S.W.2d 81, however, limitation is defeated by the statement Royal W. Jacobs made in the inventory and appraisement filed on August 1, 1932, in Illinois following his father's death. Royal W. Jacobs listed a one-half interest in the Texas land, together with a one-half interest in the vendor's lien note secured by vendor's lien on Dave Chandler's half interest in the Texas land. Such an admission, under the authority cited, shows that Royal W. Jacobs acknowledged that the appellees had title to a one-half interest. This evidence reveals that his possession of the land was not adverse to the appellees after the deed of March 1, 1909, was filed in 1926.

Cuellar v. DeWitt, 5 Tex.Civ.App. 568, 24 S.W. 671, 672, writ refused.

 The appellants complain that there were no pleadings and evidence in the record to warrant the submission of special issue No. 1. This being a trespass to try title suit, the statutory pleadings place in issue all matters relevant to the case. Since the intention of the parties was one of the controlling factors of the case, special issue No. 1 was for the purpose of determining this question. Binford v. Snyder, supra.

 Finally the appellants contend that the court erred in entering judgment for them in the amount of $8,820.75. They say that the partition should be in kind, and they insist that they are entitled to the amount due them before title vests in the appellees. The question before the court was not how the property should be partitioned but who owned the land. In addition to the amount awarded the appellants by the jury, the court allowed them interest and attorney's fees. The appellants, however, insist they should recover $72,275 instead of the amount allowed them by the court and jury. They base their contention on the argument that they are entitled to be reimbursed the sum of $8,000 which Jacobs paid Chandler on March 1, 1909, and they contend that Jacobs paid note No. 2 as well as note No. 3. The appellants failed to ask for a jury finding on this point; furthermore, we do not find the evidence to support such a claim. On the contrary the evidence does show, according to the testimony of Royal W. Jacobs, that in 1932 the amount due his father from Chandler was the one-half part of note No. 3 which was listed in the inventory and appraisement as $2,272.40. Since the appellants' claim is not conclusively established by the evidence and no issue was given or requested on this point, under Rule 279, Texas Rules of Civil Procedure, it shall be waived.

We have carefully considered the record in this case. Finding no reversible error, we overrule the appellants' points of error, and the judgment of the trial court is affirmed. Because of our disposition of the case, we have not ruled on the appellees' points of error.