ACCEPTED
04-14-00655-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
6/2/2015 12:12:15 AM
KEITH HOTTLE
CLERK

# No. 04-14-00655-CV

*On Appeal to the Fourth Court of Appeals*

*San Antonio, Texas*

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
06/2/2015 12:12:15 AM
KEITH E. HOTTLE
Clerk

Ivarene and Victor Hosek,
Appellants

v.

Rosale Scott,
Appellee

On Appeal from the 81st Judicial District Court of Atascosa County, Texas, Trial Court No. 13-06-0559-CVA, the Honorable Fred Shannon, Presiding

## Appellants' Reply Brief

Respectfully submitted,
THE CHIMENE LAW FIRM
Michele Barber Chimene
TBN 04207500
15203 Newfield Bridge Ln.
Sugar Land, TX. 77498
PH: (713) 474-5538; no fax available
michelec@airmail.net

COUNSEL FOR APPELLANTS,
THE HOSEKS

**Oral Argument Requested**

# TABLE OF CONTENTS

## Contents

TABLE OF CONTENTS ........................................................................................................ i

INDEX OF AUTHORITIES ............................................................................................... ii

REPLY TO STATEMENT OF FACTS ............................................................................... 1

REPLY TO APPELLEE'S ARGUMENT ............................................................................ 4

    1.   The Hoseks did not need to plead ambiguity ................................................................. 4

    2.   The Court wrongly found that the deed was unambiguous ............................................ 5

    3.   The Hoseks are not claiming that the fact that the parties advance different meanings gives rise to ambiguity .................................................................................................... 6

    4.   Application of the Canons of Deed Interpretation ......................................................... 7

    5.   Parol evidence is admissible ....................................................................................... 12

    6.   Adequate Competent Testimony Supports the Reversal ............................................. 13

    7.   Application of the Canons of Construction Was the Province of the Court ................. 17

    8.   The Trial Court Abused Its Discretion When It Awarded Attorneys' Fees .................. 18

    9.   Costs for Additional Documents Should Not Be Born By Appellants .......................... 18

CONCLUSION & PRAYER .............................................................................................. 19

CERTIFICATE OF COMPLIANCE ................................................................................. 20

CERTIFICATE OF SERVICE .......................................................................................... 20

# INDEX OF AUTHORITIES

## Cases

*Assoc. Oil Co. v. Hart*, 277 S.W. 1043 ( Tex. Comm'n App. 1925, holding approved) ........................... 12

*Cantu v. Frye & Assoc., PLLC*, No. 01-12-00868-CV, 2014 Tex. App. LEXIS 6384 (Tex. App. – Dallas June 12, 2014, no pet.)**………………………………………………………………**12,16

*Columbia Gas Trans. Corp. v. New Ulm Gas*, 940 S.W.2d 587 (Tex. 1996) ............................................. 5

*Curdy v. Stafford*, 30 S.W.551 (1895)**………………………………………………………………**11

*Frost Nat'l Bank v. L & F Distribs, Ltd.*, 165 S.W.3d. 311 (Tex. 2005) ..................................................... 11

*Gore Oil Co.v. Roosth*, 158 S.W.3d 596 (Tex. App. -- Eastland 2005, no pet.) ........................................ 11

*Hancock v. Butler*, 21 Tex. 804 (1858) ........................................................................................................ 11

*Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118 (Tex. 1996) ............................................................. 17

*Hinson v. Noble*, 122 S.W.2d 1082 (Tex. Civ. App. -- Fort Worth 1938, no writ**…………………………** 6

*Jacobs v. Chandler*, 248 S.W.2d 825 (Tex. App. – Amarillo 1952, no writ) .............................................. 4

*Light v. Cruse*, No. 01-87-00047-CV, 1987 Tex. App. LEXIS 8436 (Tex. App. – Houston [1st Dist.] Oct. 1, 1987, writ denied) ................................................................................................................................ 5

*Luckel v. White*, 819 S.W.2d 459 (Tex. 1991) ....................................................................................... 8,10

*McIntyre v. Ramirez*, 109 S.W.3d 741 (Tex. 2003) ................................................................................... 15

*Nat'l Union Fire Ins. Co. v. CBI Indus.*, 907 S.W.2d 517 (Tex. 1995) ...................................................... 12

*Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473 (Tex. 2001) ................................................................ 4

*Rio Bravo Oil v. Weed.*, 121 Tex.427(Tex. 1932) ...................................................................................... 12

*Rutherford v. Randal*, 593 S.W.2d 949 (Tex. 1980) ................................................................................... 4

*San Antonio Ry Co. v. Adams*, 87 Tex. 125 (Tex. 1894) ........................................................................... 13

*Terrill v. Tuckness*, 985 S.W.2d 97 (Tex. App. – San Antonio 1998, no pet) ............................................ 4

*Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154 (Tex. 1951) ..................................................... 12

*Wyman v. Harris*, 222 S.W.2d 297 (Tex. Civ. App. – Beaumont 1949) ..................................................... 4

## Rules

TEX. R. CIV. P. 94 ........................................................................................................................................ 4

## Other Authorities

Bruce M, Krammer, *The Sisyphean Task of Interpreting Mineral Deeds and Leases: An Encyclopedia of Canons of Construction*, 24 TEX. TECH. L. REV. 1 (1993)**…………………………………………..** 5

<http:legal-dictionary,thefreedictionary.com/severalty>**…………………………………………** ….. 10

# No. 04-14-00655-CV

*On Appeal to the Fourth Court of Appeals*

*San Antonio, Texas*

---

Ivarene and Victor Hosek,
Appellants

v.

Rosale Scott,
Appellee

---

On Appeal from the 81st Judicial District Court of Atascosa County, Texas, Trial
Court No. 13-06-0559-CVA, the Honorable Fred Shannon, Presiding

---

TO THE HONORABLE FOURTH COURT OF APPEALS:

COME NOW, IVARENE and VICTOR HOSEK, and file this, their Reply Brief. The Hoseks would reply as follows:

## REPLY TO STATEMENT OF FACTS

Ms. Scott spent the opening pages of Appellee's Brief trying to convince this Court that Counsel for the Hoseks claimed several unsubstantiable facts in Appellants' Brief. This is due to the fact that the Clerk who assembled the record did not paginate the Table of Contents for the two Clerk's records. As a result, there

was a discrepancy between the page number as indicated by the Word program and the page number at the bottom of the page. In retrospect, Counsel for the Hoseks regrets that she did not point out the discrepancy, and note that, because many judges use computer devices to flip from page to page, she used the pagination supplied by Word. Counsel will now reference both systems of pagination. The Supplemental Clerk's Record has page numbers on the bottom of the page that match the Word page numbers. After reviewing the citations, Counsel believes that the Court will find that all citations were correct and all the facts relied upon properly were drawn from the record:

| Fact Reference: | Btm of pg: | Word: |
|---|---|---|
| On Oct. 4, 1978, the Voigts deeded the family farm to their children. | SUPP CR 16 (cite to warranty deed); SUPP CR 45 (pleading that cites to the warranty deed | SUPP CR 16 (cite to warranty deed); SUPP CR 45 (pleading that cites to the warranty deed |
| The Hoseks and Ms. Scott then partitioned the tract, but made an agreement not to partition the minerals for twenty-five years or so long as production continued | SUPP CR 19-24; 45 | SUPP CR 19-24; 45 |
| …the partition deed did not partition the minerals, and they were severed from the surface estate | SUPP CR 20-22 | SUPP CR 20-22 |
| EOG Resources sent a Quit Claim deed to Rosale which she declined to sign. | CR 45 | CR 50 |

| | | |
|---|---|---|
| "but up until the quit claim deed, the parties treated the minerals in similar fashion." and "all parties treated the minerals as reverting to the surface owner." Examples: **[Scott]** (1) [letter written by Scott] "Victor and Ivarene Hosek own the mineral rights [under Scott's tract] for another 14 years.  Then you will get their half." (2)[Resp. to Interrog. - Scott's Admission Against Interest] "See the letter of August 22, 1989, wherein Rosale admits that the mineral interests revert to the surface owner after the 25 year period referenced in the partition deed." **[Hoseks]** (3) "We [Ivarene and Victor] are more than willing to…[execute a quit claim deed] since we fully realize that we no longer own any of the oil, gas or any other minerals on the land … [Rosale had owned] ." | (1) CR 43 (2) CR 38 (3) CR 45 | (1) CR 48 (2) CR 43 (3) CR 50 |
| "…you [Rosale] later sold [your land and minerals] to William W. (Wesley) King and wife Rosie King and the land (60 acres more or less) that you sold to Evaristo Morales, Jr. and wife Irene Morales, Rodrigo Morales, and Manuel Morales." [drawing the conclusion that if she sold the land, she got the money.] | CR 45 SUPP CR 50 | SUPP CR 50 |
| [Rosale's lawyer asked] "That we would exchange the oil and gas mineral rights there, that my sister would get all of her interest in the minerals under the surface if I would do the same, you know, exchange." | SUPP CR 73-76 | SUPP CR 73-76 |
| [examples of Rosale's conduct before and after oil was found]  (1) **[After]** the oil company approached her about signing a quit claim around Feb. 2013.  Several people told her not to sign the quit claim. (2) Depo Nov. 2013: "I thought it would be renegotiated after 25 years."  (3) [**Before**] In Dec. 6, 1985, Rosale's lawyer asked that they not wait 25 yrs to each own the minerals under their surface. | (1) SUPP CR 67-69 (2 & 3) **SUPP CR 73-76** | (1) SUPP CR 67-69 (2 & 3) **SUPP CR 73-76** |

1. <u>The Hoseks did not need to plead ambiguity</u>

Much is made in the Appellee's Brief of the fact that ambiguity was not pled in this case. The appellee refers to the case of *Terrill v. Tuckness*, 985 S.W.2d 97 (Tex. App. – San Antonio 1998, no pet), for support. However, that case only holds that ***latent*** ambiguity must be pled. 985 S.W.2d at 101 (emphasis added). Latent ambiguity is that particular type of uncertainty that arises when the land description in the deed is applied to the ground. *Id.* However, the instant case is one of patent ambiguity, where it is alleged that the ambiguity can be determined from the four corners of the document. It is similar to a trespass to try title action, where introduction of the deed introduces all issues relevant to deed construction. *Id.*; *Jacobs v. Chandler*, 248 S.W.2d 825, 831 (Tex. App. – Amarillo 1952, no writ); *Wyman v. Harris*, 222 S.W.2d 297, 308 (Tex. Civ. App. – Beaumont 1949). In *Rutherford v. Randal*, 593 S.W.2d 949, 952 n. 4 (Tex. 1980), the Texas Supreme Court held that ambiguity need not be pleaded if it is apparent on the face of the deed.

Moreover, Texas Rules of Civil Procedure 94 would not require the Hoseks to plead ambiguity as they are the plaintiffs. TEX. R. CIV. P. 94. It is the defendant's burden to plead an affirmative defense. *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 481 (Tex. 2001).

Thirdly, in jurisdictions where ambiguity is an affirmative defense that must be pled, there are exceptions to this technical rule, for example, when its purposes are otherwise satisfied and where strict enforcement would not further the equities of the case. *Light v. Cruse*, No. 01-87-00047-CV, 1987 Tex. App. LEXIS 8436 (Tex. App. – Houston [1st Dist.] Oct. 1, 1987, writ denied). In *Light*, a suit for specific performance, a letter agreement containing ambiguous language was before the trial court in both appellants' pleading and testimony, before the appellant raised an objection. *Id.* The judge correctly stated that the question was one of law for the court. The purpose of notice was satisfied. *Id.* Here, also, the document to be interpreted is before the court and the parties in pleading and in briefing. The question of interpretation is one of law for the trial court. The purpose of notice was satisfied. The Hoseks did not need to plead ambiguity.

2. The Court wrongly found that the deed was unambiguous

It is now commonly accepted that most written instruments are unambiguous. Bruce M. Krammer, *The Sisyphean Task of Interpreting Mineral Deeds and Leases: An Encyclopedia of Canons of Construction*, 24 TEX. TECH. L. REV. 1, 3 (1993). However, it is also true that, if a contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, which creates a fact issue on the parties' intent. *Columbia Gas Trans. Corp. v. New Ulm Gas*, 940 S.W.2d 587 (Tex. 1996). Appellees appear to argue that

appellants are not entitled to application of canons of contract interpretation, because the meaning of the Partition Deed is so clear. Actually, it is not. The deed does not say, "whether the minerals would ever be partitioned by the owners remained an open question." (Appellee's Brief, at 15). Actually, the deed says *nothing* about whether the minerals are partitioned after the twenty-five years. Maybe they were; maybe they weren't but could be. *Nothing* is said. The issue is left hanging in "mid air." The idea that a sentence is somehow missing after the designation of the twenty-five year period appears as rational and reasonable as the unstated conclusion that "whether the minerals would ever be partitioned by the owners remained an open question." Where there is room for reasonable minds to differ as to the meaning of the language used, *as there is here*, canons of construction are necessary. *Hinson v. Noble*, 122 S.W.2d 1082 (Tex. Civ. App. – Fort Worth 1938, no writ).

3. <u>The Hoseks are not claiming that the fact that the parties advance different meanings gives rise to ambiguity</u>

The Hoseks are not claiming that because they advance a different interpretation than Ms. Scott that fact gives rise to an ambiguity. They are claiming that the canons of contract interpretation should be applied to determine if there are two reasonable interpretation of the Partition Deed. Ms. Scott put forth only general canons of interpretation, without showing how they applied, to reach her conclusion that the minerals remained unpartitioned, yet there was enough uncertainty in the

6

bare language of the Partition Deed to merit use of the canons of contract interpretation.

4. Applications of the Canons of Deed Interpretation

On page 21 of Appellee's Brief, counsel attempts to use hypothetical "surrounding circumstances to support her position that the plain language is unambiguous. The Brief states, "When families partition land, it is very common to partition the surface but not the minerals. The primary reason for this is the perceived unfairness that could occur if the sibling who receives half the family farm ends up with a big oil or gas well, while the other sibling has a dry hole." Appellee's Brief at 21. It is now generally accepted that surrounding circumstances, either "hypothetical" or actual are not to be used to interpret deeds. Kramer, *supra*, p. 3. While the Hoseks intend that only the canons of contract interpretation be used to decide this case, it is unfair not to allow the Hoseks to dispel the "seeds" of unreality that have been planted by Ms. Scott. (a) The Hoseks and Ms. Scott do not get along and, at the time of the deed, had very different plans for the property. The Hoseks planned to continue to run the family farm, and Ms. Scott planned to dispose of her interest by sale as soon as possible. (b) Ms. Scott even planned to dispose of Ms. Hosek's interest under Ms. Scott's land, and she did so. ( CR Supp. 77). Oil wells were drilled on the sold interests after the sale, so no one was cheated by reversion. In fact, the only ones who are cheated, are the Hoseks, who are cheated by the trial

court's interpretation: Under the trial court's interpretation, they get $1/4^{th}$ of the total minerals and Ms. Scott gets monetary payment for ½ of the minerals plus $1/4^{th}$ of the total minerals, totaling $3/4^{th}$ of the whole. This defeats the whole intent of the parents, who intended to give equal shares to the women. (CR. 69-71).

Instead of looking at the surrounding circumstances, the parties' intent should be determined from the language used in the Partition Deed. *Luckel v. White*, 819 S.W.2d 459, 462 (Tex. 1991). The Partition Deed begins as follows:

" KNOW ALL MEN BY THESE PRESENTS:

That we Victor Hosek and wife, Ivarene Voigt Hosek, of the County of Wilson, State of Texas, and Rosale Voight Scott of the County of Bexar, State of Texas, have and hold in common the lands hereinafter mentioned, and are desirous of making partition of the same, it is hereby covenanted, granted, and agreed by and between said parties, and each of them covenants, grants, concludes and agrees for himself, themselves, his and their heirs and assigns, that a partition of said lands be made as follows, to-wit:

First. The said Victor Hosek and wife Ivarene Voigt Hosek shall from henceforth have, hold, possess and enjoy in severalty by themselves…

. . .[Partition Deed describes the grant to the Hoseks, and concludes that part with the following: ]

*This partition does not include any of the oil, gas, and other minerals in, on, or under the above-described tract of land and *same are to remain undivided for a period of twenty-five (25) years from the date hereof and as long thereafter as oil, gas, or other minerals are produced in paying quantities from the above described land."

(The Partition Deed goes on to make a similar grant to Ms. Scott of the other half of the parents' former land.) (CR 72-77).

Ms. Scott argues that the two phrases indicated by "*"'s are independent clauses which do not modify each other, and she does not discuss the rest of the document to determine the mineral rights passed or held. (CR 72). Because nothing is said after the phrase, "same are to remain undivided for a period of twenty-five (25) years…" about the minerals, she argues that nothing further happens without additional acts by the parties. As such, the summary judgment would be correct, however, that is not the only reasonable and plausible explanation of the document.

First and foremost, the document is a "Partition Deed", whose express intention from the first paragraph is to partition the realty held. (CR 72-77). Secondly, the two phrases of the above paragraph are joined by the word "and". The latter phrase conceivably modifies the former phrase, such that the present interest in minerals is not portioned, but a reverter is created. Thirdly, and most convincingly, the second paragraph of the document uses the word "severalty." It

9

states that the Hoseks "shall from henceforth have, hold, posess, and enjoy *in severalty* by themselves and to themselves and to themselves and to them and their heirs and assigns for their part, share, interest, and proportion of said lands and premises, *all* that certain part of land situated in Atascosa County, Texas, as follows…" (CR 72).

The problem posed, which creates a second reasonable and plausible meaning for the deed, is the legal definition of "severalty."  It is stated is relation to "land", which usually means surface and subsurface, and it means as follows:

> "**severalty**:  title to an estate.  An estate in severalty is one which is held by the tenant in his own right only, without any other being joined or connected with him in point of interest during the continuance of his estate.

<http:legal-dictionary.thefreedictionary.com>, citing John Bouvier, A LAW DICTIONARY ADAPTED TO THE CONSTITUTION AND LAWS OF THE UNITED STATES (1856).  The use of the word "severalty" suggests that Ms. Scott's interest has been removed from the property now owned by the Hoseks, or would be at the time the twenty-five years (or production) was up.  Thus, reverter to the surface owner after twenty-five years, *answering* the question of what happens after twenty-five years, is a second plausible and reasonable interpretation.  The canons of deed construction should be applied.

Texas Courts apply the four corners rule, *Luckel*, 819 S.W.2d at 462, and generally attempt to harmonize provisions in the deed that, at first, appear at odds

10

with each other. *Frost Nat'l Bank v. L & F Distribs, Ltd.*, 165 S.W.3d, 311-12 (Tex. 2005); *Hancock v. Butler*, 21 Tex. 804, 806 (1858). The *Hancock* Court wrote as follows:

> "The governing rule is, that every part of the instrument should be harmonized and given effect to, if it can be done. If that cannot be done and it is found that the deed contains inherent conflict of intentions, then the main intention, the object of the grant being considered, shall prevail.

21 Tex. at 806. This would argue for partition of all estates, and the Hoseks' ownership of 100% of the minerals under their land. Additionally, for the Hoseks portion of the Partition Deed, Ms. Scott is the grantor. Canons of deed interpretation provide that deeds shall be interpreted against the grantor, *Curdy v. Stafford*, 30 S.W. 551 (1895); *Gore Oil Co. v. Roosth*, 158 S.W.3d 596 (Tex. App – Eastland 2005, no pet.). Therefore, uncertainty would be resolved to provide for 100% ownership of the minerals by the Hoseks after the twenty-five years were up if these canons were applied.

Ms. Scott argues that the first clause in the Partition Deed, (*This partition does not include any of the oil, gas, and other minerals in, on, or under the above-described tract of land), (CR 72), expressly excludes the oil and gas and other minerals from the partition, ignoring the possibility that the following clause may modify that first clause, rather than being an independent statement. The canon that "specific clauses control over general ones", *Gore*, 158 S.W.3d at 596, and the

11

holding that a deed can independently transfer the surface estate while reserving the surface estate, *Assoc. Oil Co. v. Hart*, 277 S.W. 1043, 1045 ( Tex. Comm'n App. 1925, holding approved), argue for the opposite interpretation – that the minerals remained undivided after the twenty-five years. (Other canons which may be applied to favor one or the other interpretation are discussed in Appellants' Brief.)

Thus, after application of the canons of deed interpretation, two plausible interpretations co-exist. The Partition Deed is unambiguous. *Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154 (Tex. 1951). The trial court erred in finding that it was unambiguous.

5. Parol evidence is admissible

Because the Partition Deed is ambiguous, parol evidence was admissible and should have been considered. *Nat'l Union Fire Ins. Co. v. CBI Indus.*, 907 S.W.2d 517 (Tex. 1995). Such parol evidence was produced with the Hoseks Response to the Motion for Summary Judgment. (CR 92). Objections were made to the evidence, but Ms. Scott did not obtain a ruling. *Cantu v. Frye & Assoc., PLLC*, No. 01-12-00868-CV, 2014 Tex. App. LEXIS 6384 (Tex. App. – Dallas June 12, 2014, no pet.).

If any doubt exists as to the intention of the grantors, and a deed is ambiguous, a practical and reasonable construction given it by the parties thereto before any controversy has arisen as to its meaning will generally be given controlling effect by the courts. *Rio Bravo Oil.*, 121 Tex. at 426-47, *San Antonio Ry Co. v. Adams*, 87

12

Tex. 125, 131 (Tex. 1894). The Affidavit of Ivarene Hosek testifies as to her understanding, that expressed by her sister at the time (an admission against interest), and the prior understanding of the oil companies who researched the title. Ms Scott told buyers of her land that they would own all the minerals under Scott's land after the twenty-five years was up. (Supp. CR. 49-50). The deposition of Ms. Scott herself testified that the Hoseks would own the minerals until the twenty-five year mark, then they would get them. (Supp. CR. 64). There was testimony that Ms. Scott tried to break the "no partition" agreement before the twenty-five year mark, so that she could sell the minerals sooner. (Supp. CR. 76). And in a letter to Mr. King, one eventual buyer of Ms. Scott's land and minerals, she told Mr. King he would get all the minerals under her land in fourteen years. (Supp. CR. 78-79). The only testimony that Ms. Scott thought the partition would be renegotiated after the twenty-five years (Supp. CR. 72), came up *after* the conflict arose and thousands of dollars of oil money hung in the balance.

The great preponderance of evidence establishes that the intent of the parties was that the Hoseks' minerals had reverted to them and that 100% of the minerals under the Hoseks belong to them. The trial court's summary judgment must be reversed.

6. <u>Adequate Competent Testimony Supports the Reversal</u>

13

The Hoseks did not need to produce competent testimony to support every statement in the text portion of their Response to Defendants's Motion for Summary Judgment. The burden is unlike that of an appellate brief, where, as counsel has pointed out, each statement should cite a source. All the Hoseks needed to produce was enough evidence of the parties' intent concerning the Partition Deed to be a preponderance of the evidence in support of their position. Because Ms. Scott did not produce any pre-dispute evidence of what either she or the Hoseks intended the Deed to mean, any competent evidence would be a preponderance of the evidence. The only evidence Ms. Scott produced in favor of her interpretation was deposition testimony that was taken after the conflict was well underway. (Supp. CR. 72). It was not relevant to what the parties intended when the Partition Deed was drafted.

The Affidavit and Report of Alan D. Cummings is completely unnecessary to support the Hosek's burden to show that the parties intended the minerals to revert to the surface owner.

No one is relying upon the Affidavit of Ivarene Hosek to create ambiguity. Application of the canons of deed construction to the deed created, or, more properly, determined, that the deed was ambiguous. Because the deed was ambiguous, the Affidavit of Ivarene Hosek *was* admissible to show contemporaneous intent. Testimony of an interested witness can support a

response if it is clear, positive, direct, credible, free from contradiction and uncontroverted even though it could have been readily controverted. TEX. R. CIV. P. 166a; *McIntyre v. Ramirez,* 109 S.W.3d 741, 749 (Tex. 2003). Because all of the testimony given involved facts arising when Ms. Scott was also present, Ms. Hosek's testimony could have been readily controverted, but was not.

Ms. Scott complains that the statements are conclusory. By definition, "conclusory" statements are those that can be "broken down" into simpler facts. None of the following, all found at CR Supp. 49, could be "broken down" further. For example, the sisters did not "draw lots" and Ms. Hosek got the larger number and then they made an agreement: they simply made an agreement:

● Her sister and Ms. Hosek made an agreement to partition the property they bought from their parents on October 4, 1978;

● They agreed to let the minerals remain undivided for a period of twenty-five years and as long thereafter as oil and gas were being produced;

● After that twenty-five years, they agreed that the minerals would vest in the surface owner. (This is corroborated by Ms. Scott's testimony and writings);

● This (the Partition Deed) is the document our attorney, Joe R. Wiseman, was directed to draft;

● It was signed by the Hoseks and Scott on August 17, 1979;

● She and her sister shared the costs; and

15

- Her sister knew of the agreement.

Arguably, because these statements cannot be broken down further, they are not conclusory statements. However, the use of conclusory statements is a defect in the form of the affidavit. Defects in the form of the affidavit must be ruled upon or they are waived. *Cantu*, 2014 Tex. App. LEXIS at 6384. No written ruling is apparent from review of the record.

Most importantly, there are a number of pieces of competent evidence which indicate that it was the intent of both the Hoseks and Ms. Scott that the minerals revert to the surface owner after twenty-five years or cessation of production. In deposition, Ms. Scott testified that the Hoseks would own half the minerals for another 14 years then the buyer of Ms. Scotts land would get (all of) the minerals. (CR Supp. 64). The deposition was sworn testimony. The exhibits to the deposition were stipulated as admitted. One of these exhibits was a letter to Mr. Wesley King, a future buyer of Ms. Scott's land and minerals. Ms. Scott testified that she negotiated with Mr. King over the mineral rights. (CR Supp. 62). She wrote, "Victor and Ivarene will own their half for another fourteen years. Then you will get their half. I want to keep my half for another 30 years." This is evidence that she intended that the minerals revert to the surface owner after twenty-five years. She also gave her attorney permission to write to Ivarene about the possibility of letting the minerals revert sooner than 25 years, because the Morales wanted to buy the

16

minerals. (CR Supp 76). The complaint that the evidence cannot be considered because the deed is not ambiguous has already been shown to be incorrect. The preponderance of the evidence shows that the Hoseks and Ms. Scott intended the minerals to revert to the surface owner after twenty-five years.

7. Application of the Canons of Construction Was the Province of the Court

Appellants' Response to Appellee's Motion for Partial Summary Judgment was brief because that all that was necessary. The Hoseks argued that the Partition Deed was not unambiguous. It was ambiguous and there were "multiple interpretations of the document." (CR Supp. 40). The Hoseks argued that the proper interpretation – and the one that was intended by the parties – was that the minerals reverted to the surface owner after twenty-five years or cessation of production. (CR Supp. 39). Then the Hoseks presented the Court with evidence to show that the intention of the parties at the time was that the minerals reverted to the surface owner. That is all that was necessary to raise a fact issue. The question of whether an instrument is ambiguous is a question of law *for the Court. Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). The canons of interpretation, used to determine whether a deed is ambiguous *should be within the knowledge of the Court, as tools of law, and should be used by the Court.* It was not required that the Hoseks lecture the Court on the various canons of deed interpretation. Appellee's Brief, at pp 26-30 does not show waiver.

17

8. <u>The Trial Court Abused Its Discretion When It Awarded Attorneys' Fees</u>

Appellee suggests that Appellants caused this dispute by filing suit. The Hoseks point out to the Appellee and this Court that Ms. Scott was holding a number of draught-starved South Texas ranchers hostage by her actions. Her unwillingness to sign the quit claim deed meant that EOG, the oil company, was holding back on paying *all the mineral owners* in the various units into which the Hoseks', the Morales' and the Kings' (the latter being the buyers of Ms. Scott's interests) interests had been pooled and was considering shutting the wells in, possibly ceasing production forever. (Once a well is shut in, some formations sustain formation damage and can never flow again). And this was being done by someone **who had long ago "cashed in" and sold all of her mineral interests for cold cash and who knew she had done this**. **She had to have known SHE OWNED NOTHING.** This is the cause of this dispute. Appellants otherwise stand on their arguments about attorneys fees in Appellants' Brief. In equity, Appellants should be getting their attorneys fees paid by Appellee. An award to Ms. Scott is not equitable nor just.

9. <u>Costs for Additional Documents Should Not Be Born By Appellants</u>

Appellants argument on costs was straightforward. Appellee had not filed a Notice of Appeal. Therefore, Appellee knew she wasn't adding issues on appeal that needed additional documents. Appellee knew that issues on appeal had to have

been raised first in the trial court. Therefore, when her counsel combined that knowledge with a reading of the Letter to the Clerk requesting the Record, she knew what issues were being appealed. The sixteen documents she requested were not necessary for those issues. (CR 417). Therefore, the Appellants should not have to pay for them. Would you like some cheese with that whine?

## CONCLUSION & PRAYER

Appellants claimed that a Partition Deed was ambiguous and provided ample evidence that the parties intended that the minerals revert to the surface owner after the passage of twenty-five years and cessation of production. The trial court's judgment that the deed was unambiguous was in error and caused a wrongful judgment that Appellee owned the minerals under Appellants' land. In truth, Appellee had sold all of her minerals years before, and she knew it. The award of attorneys' fees to Appellee was not just and equitable. Additionally, an award to Appellee of costs for the unnecessary documents added to the Clerk's Record by Appellee when Appellee brought no cross appeal would be unjust and inequitable.

WHEREFORE, PREMISES CONSIDERED, Appellants ask that the summary judgment entered by the Court and the trial court's final judgment be reversed, that this appellate court enter a judgment denying attorneys' fees and costs to appellee and finding that the Partition Deed is ambiguous and that Appellants own

100% of the minerals under their land.  Appellants ask for such other and further relief to which they may be entitled.

Respectfully submitted

_____/s/ MB CHIMENE_____

THE CHIMENE LAW FIRM
Michele Barber Chimene
TBN 04207500
2827 Linkwood Dr.
Houston, TX. 77025
PH: 832 9401471; no fax
michelec@airmail.net

COUNSEL FOR THE HOSEKS

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this brief was prepared in 14 pt Times New Roman proportional font with the required margins and number of words.  There are 4908 words according to Word's word counter.

_____/s/ MB CHIMENE_____

## CERTIFICATE OF SERVICE

On this, the 1st of June, 2015, undersigned counsel served via ECF and email a true and correct copy of this Reply Brief on the following:

G. Wade Caldwell
gcaldwell@beclaw.com
Raquel Perez
rperez@beclaw.com

_____/s/ MB CHIMENE_____